# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Brown*, 2013 IL App (2d) 111228

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARISSA L. BROWN, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-1228 |
| Filed | May 6, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for felony disorderly conduct based on her false report to public employees that she had been threatened by a person with a handgun were vacated and the cause was remanded for a new trial, since the trial court's decision to allow the State to exercise a peremptory challenge to excuse a juror in the middle of defendant's trial was both constitutional and statutory error, as well as structural error warranting automatic reversal. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 10-CF-543; the Hon. Rosemary Collins, Judge, presiding. |
| Judgment | Vacated and remanded. |

Counsel on Appeal

Samuel E. Adam, of Law Offices of Samuel E. Adam, of Chicago, for appellant.

Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Marissa L. Brown, appeals from her convictions on three counts of felony disorderly conduct (720 ILCS 5/26-1(a)(4) (West 2010)) (making a false report to public employees). She asserts that we should vacate her convictions and remand for a new trial because the court, in the middle of the trial, allowed the State to exercise a peremptory challenge to excuse a juror (Carl Posley). Following *United States v. Harbin*, 250 F.3d 532 (7th Cir. 2001), we conclude that allowing the State to so exercise the challenge was structural error. We therefore vacate defendant's convictions and remand for a new trial.

¶ 2 I. BACKGROUND

¶ 3 On February 17, 2010, a grand jury indicted defendant on four counts of disorderly conduct. Each count charged defendant with, on January 5, 2010, telling a public employee or peace officer that an aggravated assault had occurred when no reasonable basis existed for defendant to believe that the offense had occurred. All counts related to defendant's report that a person had threatened her with a handgun in the restroom of Rockford's Roosevelt School; each count related to a different person's hearing the report.

¶ 4 The pretrial filings showed that the parties were concerned about ties between the incident resulting in these charges and the shooting death of Mark Barmore by two Rockford police officers. The connection is not fully explained in the record, but the gist of it is clear from the record: defendant, before the incident, was a witness to Barmore's fatal shooting, which occurred in a local church where defendant's parents were the pastors.

¶ 5 The State sought to exclude any reference to the Barmore matter at trial. In a motion *in limine* it asked:

"[That] this court specifically exclude and rule as inadmissible *** all evidence or testimony mentioning, alluding to, or in any way concerning the shooting of Mark

-2-

Barmore on August 24, 2009, Mark Barmore's name, the name of any family member not previously disclosed to the People in the defense's trial witness list and the defendant's or any other person's involvement in that or any other matter concerning Mark Barmore [except with explicit permission of the court on motion made outside the presence of the jury]."

It also sought to bar any evidence that defendant's actions were the result of post-traumatic stress syndrome or other mental illness. The court granted those motions.

¶ 6 The record–which covers the court dates at which one would expect the court to have given counsel any jury selection instructions that it might have deemed necessary–shows no instructions specific to peremptory challenges.

¶ 7 None of the witnesses (whose names the court read at *voir dire*) had any obvious connection to the Barmore case. No one gave defendant's parents' names to the potential jurors. None of the questions asked of the potential jurors related to the Barmore case.

¶ 8 The *voir dire* of juror Posley was unremarkable. Asked if he had any "close friends or relatives" employed in law enforcement, he said that he had a cousin and a friend on the Rockford police force. He said that these connections would not cause him to be biased.

¶ 9 The State apparently used two of its peremptory challenges in selecting the regular jurors, defendant seven. At least two dismissals were potentially ambiguous as transcribed.

¶ 10 Angela Carter, the State's first witness, testified that she was the principal of Roosevelt Alternative High School. On January 5, 2010, she was working in her office when defendant's parents came into the office. She spoke to the parents for a while. Based on what she heard, she called two other school employees to meet with her. With those two and the parents present, Carter made a phone call to defendant. At first, defendant was mumbling and unintelligible. After Carter told her to calm down, defendant said that she had gone into a restroom at school and someone had approached her with a gun. He had waved the gun at her and had told her to shut up. Carter testified further about defendant's description of the incident. In addressing Carter, the State referred to defendant's parents as "the Browns."

¶ 11 On cross-examination, defense counsel asked Carter if she knew defendant's parents:
"Q. [DEFENSE COUNSEL]: And so you knew who [defendant's] mother was–
A. [CARTER]: (Interjecting) Uh-huh.
Q. (Continuing)–when she arrived that day, is that fair?
A. Yes.
Q. And you knew her father, is that fair?
A. (Pauses) I–I met her father on that day.
Q. But you knew that they were pastors–
A. (Interjecting) Yes.
Q. (Continuing)–in the community?
A. Uh-huh.
Q. And you knew that Miss–Miss Brown–in fact, you see her here in court?
A. (Pauses) I don't have my glasses on. I'm sorry.

Q. Okay.

A. But I think that's her there (indicating)."

The colloquy suggests that counsel had Carter identify defendant's mother in the courtroom audience. The State did not object.

¶ 12    Another student who had been in the restroom with defendant was the State's next witness. She had not seen anything unusual.

¶ 13    After a brief recess, the court told the parties that, when one juror–Posley–heard about defendant's parents, and that they were pastors, he realized that defendant's parents' church was the one where Barmore died; Barmore was his cousin. The State suggested that it might have a challenge for cause; the court agreed that that was possible and asked to speak to Posley. Posley said that he had not had any contact with defendant or her parents, but knew of their tie to the shooting. He did not think that his connection to Barmore would affect his impartiality. The State and defendant questioned Posley. He reasserted to defendant that he did not think the connection would affect his service. The State asserted that Posley appeared to be upset. He agreed that the incident had been traumatic, but said that putting it aside would not be hard for him.

¶ 14    The State then argued to the court that Posley should be off the jury. It asserted that Posley would necessarily have information about the Barmore incident. Defendant argued that Posley had said that he could and would be fair. The court responded to defendant as follows:

"Well, you are right. I don't know that I would have struck him for cause, um, but I think that there is a chance that the State would have used a peremptory. I mean that's why we–that's why the Court entered the motion or agreed with the parties that there would be no referral to the Barmore case. *** This isn't related to the Barmore case. This is Marissa Brown's case, and she has the right to have a jury decide this case based on the facts and circumstances of this case, um, without any prejudice that may attach to anything connected to the Barmore case.

Um–(pauses)–so, State, you are asking me to let you exercise a peremptory challenge at this time?

[THE STATE]: Yes, Your Honor.

And–and I would indicate that, um, there was a relative to someone else that was struck in addition. And we would absolutely have used a peremptory had this information come forward, um,–(pauses)–and we are asking to do that at this point.

THE COURT: Yeah. The State had not used all their peremptories. They still had some left. So it's not as if they were in a situation where there would not be any peremptories left.

This information was brought out really, uh, as a result of the defense, uh, behavior–defense attorney's behavior, uh who had these people identified in court, *** made a–fairly large deal of the fact that they were pastors in a local church, and, uh–and, in fact, had a witness identify them in court. So it is certainly an issue that I think should have been brought to the Court's attention ahead of time so that we could have

-4-

named–put their names on the list to see if they had any contact with them. If they were going to be prominent players in this trial, uh, which is exactly what the defense attorney has–has done, um, by, uh–his comments during this, then we could have addressed this issue ahead of time.

Over defense objection I'm gonna allow the State to use a peremptory. This juror will be excused; and we'll be moving, uh, our first alternate, then, into that position."

Defendant argued that it was the State who had first mentioned defendant's parents. The court responded:

"They brought her parents up. They referred to her as her parents [*sic*]. They're not the ones who brought up who they were, what church that–you know, that they were pastors of a church, that had the witness identify them in court or named them by first name. I do not recall the State referring to them, uh, by any other than their last name."

The court dismissed Posley, seated the alternate juror, and the trial resumed with the testimony of more witnesses for the State. Defendant also presented evidence, including her own testimony.

¶ 15 The jury found defendant guilty on three of the four counts of disorderly conduct. Defendant moved for a new trial, arguing, *inter alia*, that the court "erred in allowing the State to dismiss[ ] Mr. Posley[ ] as a juror[ ] because he was the cousin of Mark Baremore [*sic*]." She further argued that it was error for the court to allow the State to use a peremptory challenge after the juror was sworn and trial had started.

¶ 16 The court sentenced defendant to 24 months' probation. Defendant timely appealed.

¶ 17 <center>II. ANALYSIS</center>

¶ 18 On appeal, defendant argues that the court erred in allowing the State to exercise a peremptory challenge midtrial, and that this was necessarily reversible error. The State responds that the court's error, if any, was harmless because the court had the discretion to remove Posley for cause and there is no showing that defendant was convicted by a biased jury. It also implies that defendant was the source of the problem because she pushed the limits of the order *in limine* when she emphasized the identity of her parents.

¶ 19 "It has long been recognized that once a juror has been accepted and sworn, neither party has the right to peremptorily challenge that juror." *People v. Peeples*, 205 Ill. 2d 480, 520 (2002). In *People v. Castro*, 146 Ill. App. 3d 629 (1986), we acknowledged that principle but went on to hold that, at least before the trial begins, the trial court has the discretion to *allow* the parties to exercise peremptory challenges to sworn jurors. See *Castro*, 146 Ill. App. 3d at 630-31 (the trial court did not abuse its discretion in allowing the State to peremptorily challenge a sworn juror in light of new information). Here, in light of new information, the trial court allowed the State to peremptorily challenge a sworn juror, but only after the trial had begun. We find no Illinois decision that has addressed whether the trial court's discretion extends that far, assuming that such discretion exists at all.

¶ 20 As that dearth of authority shows, the use of a peremptory challenge after the jury has begun to learn the facts of a case–and has begun, perhaps visibly, to form an opinion about

those facts–is an extraordinary departure from settled practice. Indeed, in *Harbin*, the only case we find on point, the court deemed it "unprecedented." *Harbin*, 250 F.3d at 537. Accordingly, for a relevant analysis, we look to that case. There, the court held that the midtrial use of a peremptory challenge was structural error and thus automatically reversible; no harmless-error analysis was required. Though of course we are not bound by that decision, we deem it persuasive and follow it. See *People v. Nash*, 409 Ill. App. 3d 342, 352 (2011).

¶ 21 Six days into a trial on charges relating to the distribution of cocaine, "Juror M" sent the court a note saying that he knew a prosecution witness or the mother of a prosecution witness. *Harbin*, 250 F.3d at 538. On questioning, Juror M explained the relationship, which was not close, and the interaction that had revealed the relationship. He said that the connection, which arose through his participation in Narcotics Anonymous, would not affect his impartiality. *Harbin*, 250 F.3d at 538. On further questioning, he said that his history of narcotics use also would not affect his impartiality. *Harbin*, 250 F.3d at 538.

¶ 22 The trial court declined to discharge Juror M for cause. *Harbin*, 250 F.3d at 538. However, over the defendants' objection, "the court nevertheless allowed the government to exercise one of its peremptory challenges 'left over' from jury selection, based on the newly discovered information." *Harbin*, 250 F.3d at 538.

¶ 23 The *Harbin* court started its analysis by explaining why the midtrial use of a peremptory challenge was "statutory error" (*Harbin*, 250 F.3d at 539-40):

"Not surprisingly, the rule which delineates the federal right to peremptory challenges, Fed. R. Crim. P. 24, does not explicitly address the use of peremptory challenges mid-trial. But peremptory challenges by their very nature are a jury selection tool, and have historically and uniformly been limited to the pre-trial jury selection process. *** In fact, the ability to remove jurors with peremptory challenges mid-trial is a significant weapon. At that time, the parties have had the opportunity to observe the demeanor of the jurors and to employ that knowledge in their decision. It would fundamentally alter the peremptory challenge to allow its use in this manner." *Harbin*, 250 F.3d at 539.

The court further noted that Rule 24 allowed for no more than six alternate jurors, a number that "would be woefully inadequate" if the parties "were allowed to 'save' their peremptory challenges for use during the trial." *Harbin*, 250 F.3d at 539.

¶ 24 The *Harbin* court went on to reject the claim that the discovery of new information was a basis for reviving the right to peremptory challenges:

"If *** new information impacted [a] juror's impartiality, the juror could be removed for cause. Absent that, however, the prosecutor does not have the discretion to remove a juror mid-trial. *** We have no desire to unleash fishing expeditions during trial designed to elicit 'new information' concerning seated jurors deemed undesirable, nor do we wish to encourage parties to refrain from submitting questions on *voir dire* in order to leave open avenues for challenges during trial. Peremptory challenges are a tool of jury selection as is evidenced by the consistent practice and the provisions for alternate jurors, and they have no place during the trial." *Harbin*, 250 F.3d at 539.

¶ 25 In Illinois, two provisions delineate the right to peremptory challenges: Illinois Supreme Court Rule 434 (eff. May 1, 1985) and section 115-4 of the Code of Criminal Procedure of

1963 (725 ILCS 5/115-4 (West 2010)). As noted, those provisions do not convey a right to use peremptory challenges on sworn jurors, before or during trial. See *Peeples*, 205 Ill. 2d at 520. More significantly, however, like Rule 24, those provisions do not expressly authorize *any* use of peremptory challenges during trial. See Ill. S. Ct. R. 434(d) (eff. May 1, 1985); 725 ILCS 5/115-4(e) (West 2010). As the *Harbin* court noted, this is perfectly consistent with the common definition of peremptory challenges. Further, though Rule 434 does not specify a maximum number of available alternates (Ill. S. Ct. R. 434(e) (eff. May 1, 1985)), section 115-4 allows for no more than two, and so it could not practicably authorize midtrial peremptory challenges. See 725 ILCS 5/115-4(g) (West 2010). Thus, regardless of the new information that was revealed about Posley, the State's use of a peremptory challenge to strike him was error.

¶ 26 In *Harbin*, having found "statutory error," the court went on to find a violation of the defendants' due-process rights. The court noted that the trial court had instructed the parties that peremptory challenges "could not be used once a potential juror was passed, and that subsequent challenges would be limited to challenges for cause." *Harbin*, 250 F.3d at 540. The defendants had relied on that instruction and used all of their peremptory challenges before trial. *Harbin*, 250 F.3d at 538. Thus, during trial, the court not only changed the rules of the game, but did so when only the prosecution could play:

"The prosecution was unilaterally granted control over the composition of the jury during the trial stage. Moreover, the lack of notice effectively precluded the defendants from intelligently exercising their peremptory challenge rights. That skewed the jury selection process in favor of the prosecution, and adversely impacted the ability of the peremptory challenge process to fulfill its function as a means of ensuring an impartial jury and a fair trial. Accordingly, the defendants' due process rights were violated by a jury selection process that failed to minimally inform them of the procedures that ultimately were followed, and by the decision to allow the government to unilaterally alter the composition of the jury mid-trial." *Harbin*, 250 F.3d at 541-42.

¶ 27 Here, unlike in *Harbin*, the trial court had not instructed the parties that peremptory challenges could not be used during trial. However, we do not see this absence as crucial, since, as noted, Rule 434 and section 115-4 already conveyed as much. Further, though no explicit count was kept, it appears that defendant, like the defendants in *Harbin*, used all of her peremptory challenges before trial.[1] Thus, it appears that the trial court likewise changed the rules when only the State could play. *Cf. Castro*, 146 Ill. App. 3d at 631 (because the trial court gave both parties the opportunity to peremptorily challenge a sworn juror, the State did not receive an " 'unfair advantage' ").

---

[1]Rule 434 provides for 7 peremptory challenges in a felony case (Ill. S. Ct. R. 434(d) (eff. May 1, 1985)), while section 115-4 provides for 10 (725 ILCS 5/115-4(e) (West 2010)). The appellate court has consistently held that Rule 434 trumps section 115-4. See *People v. Hendrix*, 250 Ill. App. 3d 88, 104 (1993); *People v. Harbold*, 220 Ill. App. 3d 611, 619 (1991); *People v. Colclasure*, 200 Ill. App. 3d 1038, 1042 (1990); *People v. Whitlock*, 174 Ill. App. 3d 749, 769 (1988); *cf. People v. Daniels*, 172 Ill. 2d 154, 160 n.1 (1996) (supreme court declined to resolve whether Rule 434 preempts section 115-4).

¶ 28    We hasten to add that, even if defendant, like the State, did not use all of her peremptory challenges before trial, the trial court did not suggest that she, like the State, was at liberty to use one *during* trial. Instead, though the court did note that the State had not used all of its peremptory challenges, it allowed the State to use one only in response to the "defense attorney's behavior." The State defends the action on precisely that basis, asserting that defendant, by referring to her parents, arguably violated the order *in limine*. However, the court's response to that arguable violation was to allow the State, as in *Harbin*, "to unilaterally alter the composition of the jury mid-trial." *Harbin*, 250 F.3d at 542. Allowing the State to invade an impartial jury is not a proper sanction for a violation of an evidentiary order. On the contrary, as in *Harbin*, it works a violation of due process.

¶ 29    Finally, having found both statutory and constitutional error, the *Harbin* court concluded that the error was automatically reversible: it produced a "structural defect[ ] affecting the framework in which the trial proceeds" (*Harbin*, 250 F.3d at 542), such that a harmless-error analysis was inappropriate. This was because, again, the error compromised the impartiality of the jury:

> "[V]iewing the error strictly in light of precedent addressing peremptory challenges, automatic reversal is required. *** Here, *** the error calls into question the impartiality of the jury because it cripples the device [(peremptory challenges)] designed to ensure an impartial jury by giving each party an opportunity to weed out the extremes of partiality. Therefore, the presumption [that the jury is impartial] is inapplicable. ***

> Any other holding would effectively eliminate the ability of defendants to appeal any restrictions on peremptory challenges, thus frustrating the peremptory challenge device as a means of ensuring an impartial jury. Some examples may illustrate the problem. Consider the scenario in which the district court rules that the defendants must use their peremptory challenges pre-trial, but that the government could use them at any point in time before the jury retired to deliberate. Or, the situation in which the court determines that only the government, and not the defendant, will be allowed the use of peremptory challenges. [Citation.] Both examples may seem farfetched, but so did the use of a peremptory challenge mid-trial before this case. In each instance, the framework in which the trial proceeds is fundamentally altered, with an effect that is difficult to establish. Are we to say that reversal is inappropriate in those instances because the jury that actually sat was impartial, based on the fiction that the challenges for cause eliminated all biased jurors and that peremptory challenges are a statutory creation not constitutionally-required? *** [A] system that grants the right to only one party threatens that goal of an impartial jury by skewing the jury towards the favored party. *** We cannot tolerate a system in which control over the jury rests in the exclusive domain of one party during a particular stage of the proceedings. That is a structural error that requires automatic reversal." *Harbin*, 250 F.3d at 548-49.

¶ 30    Here, the same is true. The State, after having been able to observe Posley's reactions to the opening statements and to the testimony of two important witnesses, was allowed the choice whether to keep him on the jury. As in *Harbin*, that kind of intervention is incompatible with proper functioning of safeguards to the jury's impartiality. It amounts to structural error, requiring automatic reversal. See also *People v. Robinson*, 299 Ill. App. 3d

426, 437 (1998) ("the denial or impairment of defendant's peremptory right is reversible error and a showing of prejudice to defendant is not necessary").

¶ 31      The State responds that any error was harmless because the trial court had the discretion to remove Posley for cause and nothing indicates that "a biased juror actually sat." *Castro*, 146 Ill. App. 3d at 631. However, the court suggested that it was leaning *against* removal for cause, and with good reason. Indeed, the record is consistent with Posley's having been a qualified juror in spite of his connection to Barmore. The connection between this case and the Barmore matter was merely a curious sidelight. Thus, Posley's recognition of defendant's association with the matter would not have necessarily instilled a bias in his mind. Moreover, nothing in Posley's statements suggested that his ties to Barmore would have influenced his evaluation of the witnesses. Posley had a family connection to Barmore, but also a family connection to a Rockford police officer and a friendship with another member of that police force. And, in the end, Posley said that he believed that he could keep the cases separate. All of this is consistent with Posley's having been able to serve. Under these facts, we will not recast the State's peremptory challenge as equivalent to a removal for cause.

¶ 32      Further, though we might deem harmless a *pretrial* peremptory-challenge error, presuming that the jury was impartial (see *Castro*, 146 Ill. App. 3d at 631), we will not extend that presumption to this context. As in *Harbin*, this error "cripple[d] the device designed to ensure an impartial jury." *Harbin*, 250 F.3d at 548. We will not shut our eyes and blindly presume, nevertheless, that the jury was impartial.

¶ 33                                                 III. CONCLUSION

¶ 34      For the reasons stated, we vacate defendant's convictions and remand the matter for a new trial.

¶ 35      Vacated and remanded.