# IN THE COURT OF APPEALS OF IOWA

No. 17-0154
Filed June 20, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MARSEAN T. FENTON,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk, Judge.

Marsean Fenton appeals from his convictions for burglary in the third degree following a home invasion and burglary in the third degree from a motor vehicle. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Heard by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**TABOR, Judge.**

A jury found Marsean Fenton guilty of third-degree burglary for a home invasion. He also pleaded guilty to a separate charge of misdemeanor burglary of a motor vehicle. On appeal, he argues (1) the removal of the only African American juror on his panel, after the jury had been sworn, was improper and prejudiced him as an African American defendant; (2) the district court erred in denying his mistrial motion after the jury viewed a prejudicial portion of a patrol car video; (3) substantial evidence did not support the jury's verdict; (4) trial counsel was ineffective by allowing Fenton to plead guilty to the misdemeanor burglary when the speedy-trial rule would have resulted in dismissal of that charge; and (5) trial counsel was ineffective in not challenging the sentencing court's failure to abide by the plea agreement on the misdemeanor charge. Because Fenton cannot show prejudice from the juror's removal, the court did not abuse its discretion in denying the mistrial motion, and substantial evidence supported the jury's verdict, we uphold the felony conviction. Because the record is inadequate to assess the merits of the two ineffective-assistance claims, we preserve them for possible postconviction-relief proceedings.

## I.    Facts and Prior Proceedings

In November 2015, the State charged Fenton with burglary in the third degree from a motor vehicle, an aggravated misdemeanor, in violation of Iowa Code section 713.6A(2) (2015). Fenton entered a written guilty plea, allegedly conditioned upon the court's acceptance of the negotiated sentence including a 180-day suspended jail term. Fenton planned to request a deferred judgment at

sentencing. The sentencing court did not accept the plea agreement conditions, instead imposing a two-year suspended sentence.

In a separate incident, the State charged Fenton with burglary in the third degree, a class "D" felony, in violation of Iowa Code section 713.1 and .6A.[1] At 12:30 p.m. on October 25, off-duty police officer Nicholas Berry saw two individuals, later identified as Kevantae Reed and juvenile K.M.[2], standing at a street corner near a closed business. Berry saw another man, Fenton, standing about fifty feet away, urinating on a fence. Berry knew a woman lived alone in the adjacent house on Maxwell Road. Berry stopped his car in a nearby driveway and called an on-duty police officer to "come over and check on these individuals."

While Berry was on the phone, he watched Fenton motion to Reed and K.M. as if calling them over to him. Reed and K.M. did not walk toward Fenton, but after a few moments, Fenton walked toward them. Berry circled the block but the men walked behind a building out of his sight. After a few minutes, Berry saw them again, walking toward the same corner. After few more minutes of circling, Berry saw Reed standing alone in the driveway of the Maxwell Road house. Berry said Reed was pacing and looked "anxious".

Soon uniformed police officers arrived. Reed was no longer in the driveway. Officers heard the rattling of a chain link fence in the back yard. At the back of the house, they found an open window with the screen removed. Inside the house was a red pry bar on which criminalists later found K.M.'s finger and palm prints.

---

[1] Originally, the State charged attempted burglary. The State amended the trial information to charge burglary in February 2016.
[2] Police later determined K.M. was Fenton's fifteen-year-old brother.

The officers discovered Reed on the other side of the fence with two small puncture wounds in the palm of his hand. In his pocket were rubber gloves, one of which was torn and bloody. The officers determined Reed had injured his palm on the "Y"-shaped wires at the top of the chain link fence. Officers also matched the tread on Reed's shoes to marks left in the dirt at the backyard's fence line.

Another officer driving in his car saw Fenton and K.M. run from behind a nearby business. The officer stopped and asked to talk with Fenton and K.M. They were both sweating and breathing hard. The officer arrested them and searched their pockets before placing them in the back of a police car. Officers recovered cash from K.M.'s pocket. In Fenton's pockets, officers found cash, change, and rubber gloves. The gloves did not appear to have been worn.

Once the homeowner arrived, officers entered and discovered open doors and drawers. The homeowner reported some cash and change she kept in a jar in the dining room was missing.

At Fenton's trial, the court swore in thirteen jurors—twelve who would eventually serve and one alternate. The parties agreed all thirteen jurors would hear the evidence and one would be dismissed by random selection before deliberations. After jury selection, the trial recessed for one week to accommodate defense counsel's military duty. During the recess, the State discovered one of the jurors, J.W., had not disclosed prior convictions and charges pending in Black Hawk County. Upon reconvening, but before the presentation of evidence, the State requested removal of juror J.W. for cause and the court agreed. The remaining twelve jurors heard the evidence and found Fenton guilty of burglary in the third degree. Fenton appeals.

## II.    Analysis

### A.  Juror Removal

Fenton asks for reversal based on the court's removal of juror J.W. after the thirteen jurors were sworn in but before the State started its case in chief.  The prosecutor sought removal after finding J.W. had improperly filled out his jury questionnaire.  Question 4 asked, "Have you ever been convicted of a crime other than a traffic offense."  J.W. checked, "Yes," and disclosed a 2014 conviction for public intoxication but did not included additional convictions for disorderly conduct and obstruction of 911 communications.  Question 5 asked, "Have you or any close friend or relative been a party or witness in a court case other than a divorce proceeding?"  J.W. responded, "No."  The State later discovered J.W. had two additional pending criminal charges.  The charges were being handled by the same assistant county attorney prosecuting Fenton's case.   During voir dire, the prosecutor twice asked the potential jurors if they knew "anybody with the County Attorney's Office" or if they had "any family members or friends currently being prosecuted by the Black Hawk County Attorney's Office[?]"  J.W. did not respond.

The defense resisted the prosecution's request for removal, arguing the State waived its objection to the juror by not discovering the additional information earlier and noted his dismissal would remove the only African American juror on the panel, but counsel declined to raise a *Batson*[3] challenge.

The court found the State could not have realized the need for removal during voir dire because J.W. had not properly disclosed his pending charges,

---

[3] *Batson v. Kentucky*, 476 U.S. 79 (1986), sets out a procedure for challenging the exercise of a peremptory strike against a potential juror on the improper basis of race.

even when asked by the State.[4]  The court agreed to excuse J.W., but noted it was not finding J.W. intentionally misled anyone: "It's very likely this was a misunderstanding of the question being asked."  The court concluded, "[T]he fact that he is being prosecuted would be extremely prejudicial to the State in this case."

The court brought J.W. into the courtroom and explained why he was being excused.  J.W. said, "All right, thank you."  Neither party engaged in further discussion with J.W.  The court began the trial immediately afterward.

On appeal, Fenton raises several contentions.  First, the State waived its objection to J.W. when it did not raise the issues before the jury was sworn.  Second, jurors may only be dismissed on limited bases after they have been sworn—including misconduct, bias, or hardship to the juror—and none of those was proven here.  Third, removal of the juror constituted per se prejudice resulting in Fenton not receiving a fair trial.  In addition, removing the only African American juror from the panel trying an African American defendant affected the jury's impartiality and warrants reversal.

Fenton's arguments implicate both constitutional and statutory rights.  The state and federal constitutions guarantee the rights to due process and a fair and impartial jury.  *See* U.S. Const. amend. VI (impartial jury), XIV § 1 (due process of law); Iowa Const. art I, §§ 9 (due process of law), 10 (impartial jury).  They also guarantee the right to equal protection, implicated in the jury selection process.  *See* U.S. Const. amend. XIV (equal protection); Iowa Const. art I, § 6 (equal

---

[4] The State also represented that J.W. spelled his first name differently on the juror questionnaire from how it was spelled on Iowa Courts Online; therefore, its online search of the jurors showed no results.

protection). Iowa Rule of Criminal Procedure 2.18 sets out the rules for the jury selection process.

We review a decision to remove a juror for cause for an abuse of discretion. *State v. Tillman*, 514 N.W.2d 105, 107 (Iowa 1994). "[T]he district court is vested with broad discretion." *Id.* We review a decision to remove a juror for misconduct or bias for abuse of discretion as well. *State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015). We review the application of Iowa Rule of Criminal Procedure 2.18 for errors at law; if the alleged error involves a constitutional violation, we review de novo. *State v. Mootz*, 808 N.W.2d 207, 214 (Iowa 2012).

Rule 2.18(5)[5] sets out when a juror may be removed for cause during the selection process. Fenton contends the State waived its objection to J.W. by not raising a for-cause objection before the juror was sworn in. *See State v. Hendrickson*, 444 N.W.2d 468, 472 (Iowa 1989) (finding objections to prospective jurors that are known or may be ascertained "are waived if no challenge is made before the jury is sworn" (citing *State v. Cuevas*, 288 N.W.2d 525, 534 (Iowa 1980)

---

[5] These grounds include, in relevant part:
      a. A previous conviction of the juror of a felony.
      b. A want of any of the qualifications prescribed by statute to render a person a competent juror.
      . . . .
      f. Being a party adverse to the defendant in a civil action, or having been the prosecutor against or accused by the defendant in a criminal prosecution.
      . . . .
      k. Having formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent the juror from rendering a true verdict upon the evidence submitted on the trial.
      . . ..
      m. Because the juror is a defendant in a similar indictment, or complainant against the defendant or any other person indicted for a similar offense.
Iowa R. Crim. P. 2.18(5).

and *State v. Grove*, 171 N.W.2d 519, 520 (Iowa 1969))). The district court determined J.W.'s additional pending charges were neither known nor ascertainable during voir dire because J.W. filled out his questionnaire incorrectly and did not respond when the issue was raised. The court recalled the State had directly asked whether anyone had pending charges, but the voir dire transcript shows the prosecutor asked if anyone knew "friends [or] family" who currently had pending charges.[6]

Next, Fenton argues the State did not show any of the limited grounds for removing jurors after they are sworn. After swearing in, a juror may be removed for bias or misconduct. *See Webster*, 865 N.W.2d at 232. The State contends Iowa Code section 607A.6 also allows the court to dismiss a juror following swearing in and such dismissal is within the broad discretion of the court:

> The court may *defer* a term of grand or petit juror service upon a finding of hardship, inconvenience, or public necessity; however the juror may be required to serve at a later date established by the court. The court may *excuse* a person from grand juror service, considering the length of grand juror service, in part or in full, upon a finding that such service would threaten the person's economic, physical, or emotional well-being, or the well-being of another person who is dependent upon the person, or other similar findings of extreme hardship. The courts shall exercise this authority strictly. However, in exercising this authority the court shall allow the employer of the person being asked to serve to give testimony in support of a request by the person for deferral or excuse. *The court may dismiss a juror at any time in the interest of justice.*

Iowa Code § 607A.6 (emphasis added.) The State relies on the final sentence for the proposition that the court may dismiss a juror for any *reason* in the interest of

---

[6] Fenton also argues, even if the State had obtained this information during jury selection, Iowa Rule of Criminal Procedure 2.18(5) provides no grounds for dismissal for cause under these circumstances without establishing the juror would be biased against the prosecution.

justice. But Fenton argues the whole paragraph must be read together. Read in context and given the section's specific reference to threats to a juror's "economic, physical or emotional well-being, or the well-being or another person who is dependent upon the person," Fenton asserts the only reason to dismiss a juror is for a hardship to the *juror* or the juror's dependent. Therefore, Fenton contends, J.W. could only have been dismissed upon a showing of misconduct, bias, or personal hardship. The parties do not assert J.W. experienced any hardship to justify dismissal under section 607A.6.

The court declined to find J.W. engaged in misconduct by not filling out the jury questionnaire completely or not speaking up during voir dire. Fenton points out neither the parties nor the court asked whether J.W. was aware his charges were being handled by the same prosecutor. Fenton also asserts the State failed to show J.W. was biased because after confronting J.W. with the existence of the additional charges, neither the court nor the parties asked J.W. whether he could remain impartial.[7] We find it unnecessary to address whether a duty existed to make a record before the court ruled on the removal motion. Even if J.W.'s removal constituted error, Fenton must show he was prejudiced by the exclusion.

In *State v. Neuendorf*, our supreme court abandoned a decades-old rule that error in denying a challenge for cause, even where the biased juror was

---

[7] In a somewhat different context, our supreme court addressed a court's efforts to rehabilitate a juror who showed actual bias. In *State v. Jonas*, 904 N.W.2d 566, 575 (Iowa 2017), the court found the district court abused its discretion in refusing to disqualify a potential juror who initially expressed unequivocal bias or prejudice against the defendant:

> Where a potential juror initially repeatedly expresses actual bias against the defendant based on race, ethnicity, sex, or sexual orientation, both in a pretrial questionnaire and in voir dire, we do not believe the district court can rehabilitate the potential juror through persistent questioning regarding whether the juror would follow instructions from the court.

removed by a peremptory strike, warrants automatic reversal. 509 N.W.2d 743, 746 (Iowa 1993) (discussing *State v. Beckwith*, 46 N.W.2d 20 (Iowa 1951)). The court held, "Prejudice will no longer be presumed from the fact that the defendant has been forced to waste a peremptory challenge." *Id.* at 747. The court cited *Ross v. Oklahoma*, 487 U.S. 81 (1988), noting "the proper focus when the impartiality of a jury is questioned is the jury that ultimately sat." *Neuendorf*, 509 N.W.2d at 746. Thus, the defendant must show the remaining jury was not impartial. Subsequently, the supreme court in *State v. Mootz* found, where the court erroneously denied a defendant's proper exercise of a peremptory strike, and the juror in question remained on the jury, "we will presume the error is prejudicial." 808 N.W.2d at 225.

Fenton urges two arguments regarding prejudice. First, he contends the removal of the juror without a legal basis after swearing in was equivalent to the State exercising an extra peremptory strike. He asserts this irregularity is per se prejudicial because it skews the make-up of the jury toward the State—regardless of the race of the juror who was removed. In *United States v. Harbin*, the Seventh Circuit Court of Appeals found the use of a peremptory strike the prosecution had "saved," on the sixth of eight days of trial, violated the defendant's due process rights. 250 F.3d 532, 539 (7th Cir. 2001). Even though the dismissed juror was replaced by an alternate, and neither party alleged the alternate was biased, the court found the error required automatic reversal because the government was able to observe the demeanors of the jurors through six days of trial and determine who might be favorably disposed toward their case before exercising the strike. *Id.* at 545-49; *see also People v. Brown*, 989 N.E.2d 737, 744 (Ill. App. Ct. 2013)

(finding structural error requiring automatic reversal when trial court allowed State to exercise peremptory challenge to excuse juror mid-trial). But in Fenton's trial, no evidence had yet been presented so the parties had not had the chance to scrutinize the jurors' reactions. This timing distinguishes the instant case from *Harbin* and *Brown* and the dangers the courts contemplated in those situations. The State did not exercise a post-swearing peremptory strike to skew the make-up of the jury in its favor mid-trial. We decline to adopt a per se rule based on these facts.

Fenton next argues prejudice can be presumed because removing the only African American juror affected the impartiality of the panel. He cites *Mootz*, where the trial court erroneously prevented a defendant from exercising a peremptory strike to remove a potential juror he believed demonstrated bias against law enforcement officers. 808 N.W.2d at 219. But *Mootz* differs from the instant situation and *Neuendorf*. In *Neuendorf*, the allegedly biased juror was removed and the defendant had to show the remaining jury panel was partial. *Id.* In *Mootz*, the biased juror was allowed to serve. 808 N.W.2d at 213. Under those circumstances, automatic reversal was warranted because the prejudicial effect of a juror later found to be partial and who sat on a jury over the defense objection can be presumed. Fenton asks us to presume the jury was less impartial in his case because J.W., the only African American juror, was removed. Fenton cites studies indicating a disproportionate rate of conviction when an African American defendant is tried by an all-white jury versus a jury with at least one person of color. *See, e.g.*, Shamena Anwar, et al, *The Impact of Jury Race in Criminal Trials*, 127 Q.J. Econ. 1017, 1027-28 (2012). As our supreme court has discussed, the

underrepresentation of minorities in Iowa's jury pools is troubling. *See State v. Plain*, 898 N.W.2d 801, 826 (Iowa 2017) (citing Anwar's research with approval). But in Fenton's case, we cannot find the direct line between the removal of an African American juror and a finding of prejudice.

A criminal defendant has "no right to a trial before any particular juror or jury. . . . All [they can] insist upon [is] a competent and impartial jury." *Summy v. City of Des Moines*, 708 N.W.2d 333, 339 (Iowa 2006), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). We recognize "'courts presume that a prospective juror is impartial,' [so] establishing juror partiality is a high hurdle." *United States v. Needham*, 852 F.3d 830, 839 (8th Cir. 2017) (quoting *Moran v. Clarke*, 443 F.3d 646, 650 (8th Cir. 2006)). Fenton points to no evidence in the record or legal authority supporting the presumption of bias from the racial make-up of the jury. Nor does Fenton flag any actual or implied bias displayed by the rest of his jury panel. We must follow supreme court precedent regarding the necessary showing for prejudice in jury selection. *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014). Under these circumstances, we cannot presume the bias of the remaining jurors following J.W.'s removal. Fenton has not demonstrated the impaneled jury lacked impartiality.[8]

---

[8] Fenton asks us to consider this issue under the framework on an ineffective-assistance-of-counsel claim in the alternative. But, Fenton does not identify what action or inaction specifically constituted the deficiency in counsel's conduct. Nonetheless, an assertion that the jury was unfair as a result of the removal of the juror would not have been a meritorious claim and generally, we do not fault counsel for not pursuing a claim that lacks merit. *See State v. Utter*, 803 N.W.2d 647, 653 (Iowa 2011), *overruled on other grounds by Schmidt v. State*, 909 N.W.2d 778 (Iowa 2018).

### B. Video Evidence

Fenton next contends he was entitled to a mistrial after the State showed the jury part of a video excluded by pretrial order. The excluded portion came at the end of a patrol car video showing brothers Fenton and K.M. under arrest in the backseat as they wait to be booked into the jail. The video included the following conversation—though it was quiet and barely intelligible:

> Fenton: [Unintelligible] . . . swallow that shit . . . .
> K.M.: No I can't.
> Fenton: Yes you can.
> K.M.: [Unintelligible.]

The brothers then pass something behind their backs, where their hands were secured. The sound of loose change dropping onto the floor of the car can be heard. K.M. leans forward out of camera range, then leans back into the shot and has something in his mouth. He chews for twenty to thirty seconds. The video went on to show a police officer returning to the patrol car and asking why it smelled like "dope" but the State stopped the video before the jury could hear the officer's comment.

Fenton immediately moved for mistrial, which the court denied. But the court offered to give a cautionary instruction directing the jury to disregard that portion of the video. Fenton declined on the belief that drawing further attention to the evidence would be detrimental. The court ordered the State to refrain from having witnesses or exhibits that mentioned drugs for the remainder of the trial. According to Fenton, the court's actions were insufficient to address the State's violation of the pretrial order. Fenton contends a mistrial was necessary because

the jury would have inferred Fenton was passing drugs to K.M. to conceal evidence before being booked into jail. He contends this exchange was prejudicial because K.M. is Fenton's fifteen-year-old brother.

We review rulings on mistrial motions for an abuse of discretion. *State v. Newell*, 710 N.W.2d 6, 32 (Iowa 2006). The court abuses its discretion when defendant shows "prejudice which prevents him from having a fair trial." *State v. Callender*, 444 N.W.2d 768, 770 (Iowa Ct. App. 1989). The district court has wide discretion to deny a motion for mistrial because "it is in the best position to appraise the effect of any alleged misconduct." *State v. Frei*, 831 N.W.2d 70, 80 (Iowa 2013), *overruled on other grounds by Alcala*, 880 N.W.2d 699.

In light of the wide discretion accorded the district court, we decline to grant a new trial on this issue. Fenton has not demonstrated his trial was rendered unfair by the inadvertent playing of the excluded portion of the video. It is unlikely the jurors heard the brothers' brief conversation about "swallowing" something. The audio was quiet and of poor quality. One juror said during the playing of the video, "I'm not sure if it's just the filming, but I could barely understand anything that they're saying." The objectionable portion ran less than one minute while the jury was shown a total of thirty minutes of video. In addition, the video was stopped before the officer said his car smelled like marijuana, which was the most prejudicial part because it strongly suggested the conversation related to drugs. We have no evidence the jurors inferred drugs were involved, and Fenton declined a cautionary instruction. The court properly ordered the State to avoid further mention of drugs in the trial. Fenton has not demonstrated an abuse of discretion or prejudice in the denial of the mistrial.

### C. Substantial Evidence of Burglary

Fenton contends insufficient evidence supports the jury verdict that he committed burglary in the third degree either as a principal or by aiding and abetting. He argues the State failed to prove he entered the home. He also argues the State offered insufficient evidence he was both present and had knowledge of the burglary while it was going on—he consistently reported he did not want to participate and left before the break-in.

We review challenges to the sufficiency of the evidence for errors at law. *See State v. Hansen*, 750 N.W.2d 111, 112 (Iowa 2008). We will uphold the verdict if it is supported by substantial evidence. *State v. Rooney*, 862 N.W.2d 367, 371 (Iowa 2015). We view the evidence in the light most favorable to the State, "including all reasonable inferences that may be fairly drawn from the evidence." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). Evidence is sufficient if it could convince a rational jury the defendant was guilty beyond a reasonable doubt. *Rooney*, 862 N.W.2d at 371. Evidence is not substantial if it raises only suspicion, speculation, or conjecture. *State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016).

The court instructed the jury that burglary in the third degree requires proof of the following elements:

1. Defendant entered the home or aided and abetted another person or persons to do the same.
2. The home was an occupied structure.
3. The defendant or any person or persons he may have aided and abetted did not have permission or authority to enter the home.
4. The home was not open to the public.
5. The defendant did so with the specific intent to commit a theft, or to aid and abet a theft, having no right, license, or privilege to do so.

After reviewing the record, we conclude the State offered substantial evidence of Fenton's participation in the burglary. "Knowledge of the crime may be shown by circumstantial evidence," which may include "presence, companionship, and conduct before and after the offense is committed." *State v. Hustead*, 538 N.W.2d 867, 879 (Iowa Ct. App. 1995). Subsequent conduct is relevant if it shows the accused's prior encouragement or participation. *Id.* A passerby saw Fenton interacting with Reed and K.M. near the house before the burglary. Fenton did not live in the neighborhood. When officers entered the back yard, they determined Reed had scaled the fence. Shortly afterward, police saw Fenton running with K.M., whose fingerprints were detected on a pry bar left inside the house. The jury could reasonably have concluded K.M. did not just catch up with Fenton, who allegedly left earlier, as the men were together and breathing heavily when an officer intercepted them. Rather, a reasonable jury could surmise Fenton was with K.M. the entire time. Jurors could infer from the circumstances Fenton was not just present but knew about and participated in the burglary.

Officers also found a pair of rubber gloves in Fenton's pocket, much like the gloves found in Reed's pockets. Although Fenton's gloves looked unused, a reasonable jury could infer Fenton's possession of the gloves showed knowledge and intent to enter the home and participate in a theft or approval and agreement in Reed or K.M.'s entry. Fenton also had a "wad of bills" and change in his pocket. Although the money could have belonged to Fenton, police learned the homeowner reported about ten dollars in cash and loose change missing from an open jar in her dining room.

Fenton told police he did not want to participate in the break-in and left before it occurred. But "the jury was free to reject certain evidence and credit other evidence." *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). The evidence, taken in the light most favorable to the State, was sufficient to convince a rational jury defendant was guilty beyond a reasonable doubt.

### D. Ineffective Assistance of Counsel Claims

Fenton's next two contentions regard his guilty plea to burglary in the third degree from a motor vehicle.[9] First, he asserts his counsel rendered ineffective assistance by allowing him to enter a guilty plea one day after the speedy trial deadline. The State filed a trial information on November 2, 2015, and Fenton's attorney filed a written guilty plea on February 1, 2016. Fenton had not waived speedy trial, and the ninety days ran on January 31, 2016. Second, Fenton contends the district court erred in not allowing him to withdraw his guilty plea when it did not follow the parties' sentencing recommendations; alternatively, he raises the departure from the plea agreement as ineffective assistance of counsel. Because we find the record inadequate to address either of these claims, we preserve them for possible postconviction-relief proceedings. *See State v. Thorndike*, 860 N.W.2d 316, 319 (Iowa 2015).

**AFFIRMED.**

---

[9] We review ineffective-assistance-of-counsel claims de novo. *State v. Henderson*, 908 N.W.2d 868, 874 (Iowa 2018). To prevail, Fenton must prove by a preponderance of the evidence that counsel breached an essential duty resulting in actual prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).