# Illinois Official Reports

## Appellate Court

---

### *People v. Brown*, 2017 IL App (2d) 160971

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARISSA BROWN, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0971 |
| Filed | December 18, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 10-CF-543; the Hon. Rosemary Collins, Judge, presiding. |
| Judgment | Affirmed and remanded. |
| Counsel on Appeal | Craig M. Sandberg, of Muslin & Sandberg, of Chicago, for appellant.<br><br>Joseph P. Bruscato, State's Attorney, of Rockford (Patrick Delfino, Lawrence M. Bauer, and Marshall M. Stevens, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion.<br>Justices Jorgensen and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1     This is the third appeal by defendant, Marissa L. Brown. In her first appeal, we vacated her convictions of three counts of felony disorderly conduct (720 ILCS 5/26-1(a)(4) (West 2010)) (making a false report to public employees) because the Winnebago County circuit court had improperly allowed the State to remove a juror with a peremptory challenge after the trial had started. We further granted her request for a new trial. In her second appeal, we affirmed the trial court's denial of defendant's motion to dismiss the remaining counts on double-jeopardy grounds. In this third appeal, we again review the trial court's denial of a motion to dismiss the remaining counts on double-jeopardy grounds: defendant asserted that the prosecutor intentionally sought to goad her to move for a mistrial. That is, she asserts that retrial is barred due to intentional prosecutorial overreaching. The State argues that multiple grounds for affirmance exist. We agree, and we thus affirm.

¶ 2                                   I. BACKGROUND

¶ 3     Defendant originally had a jury trial on four counts of felony disorderly conduct. Each count alleged that, on January 5, 2010, defendant, who had no reasonable basis to believe that an offense had occurred, had told a public employee or peace officer that she had been the victim of an aggravated assault. (Defendant had reported that someone had come into the restroom of Rockford's Roosevelt Alternative High School while she was there and had threatened her with a handgun.) Each of the counts was based on an allegation that a different person had heard defendant's report: Roosevelt principal Angela Hite Carter, Rockford schools employee Ellen Van Horn, law-enforcement officer Patrice Turner, and law-enforcement officer Courtney Tillmon-Listhrop.

¶ 4     The parties disagreed whether the jury should hear about possible links between defendant's case and the fatal shooting by Rockford police officers of a man, Mark Barmore, whom they were pursuing. Defendant witnessed the shooting, which occurred in the church of which her parents were the pastors. The State sought to exclude evidence relating to the shooting as irrelevant, while defendant argued that excluding everything related to it would deprive the jury of necessary context. The court ruled for the State and barred both parties from putting on any evidence that mentioned or alluded to the shooting or that mentioned "the name of any family member not previously disclosed to the People in the defense's trial witness list."

¶ 5     Jury selection for the trial was superficially unremarkable. The witnesses, whose names the court read at *voir dire*, had no evident connection to the Barmore case, and none of the selected jurors disclosed significant ties to any of the witnesses or to defendant. Neither the court nor either party mentioned the names of defendant's parents to the potential jurors, and none of the questions asked of the potential jurors related to the Barmore case. However, unbeknownst to the court or the parties, one juror selected, Carl Posley, was Barmore's cousin.

¶ 6     Carter, the principal of defendant's school, was the State's first witness. She testified that defendant's parents had come to her office and had reported an incident. Based on what she heard, she called two other school employees into the office. With defendant's parents and one employee, Van Horn, present, Carter telephoned defendant, identifying herself and mentioning the presence of defendant's parents but not that of Van Horn. Carter initially had difficulty talking to defendant, who was evidently upset. Eventually, defendant told Carter that someone had come into a school restroom while she was in it, waved a gun at her, and told her to "shut

the f-u-c-k up." In addressing Carter, the State referred to defendant's parents as "the Browns." On cross-examination, defense counsel educed evidence that Carter knew defendant's parents and was aware that they were pastors of a local church. The colloquy suggests that defense counsel had asked Carter to identify defendant's mother in the courtroom audience and that the State had not objected to this.

¶ 7    The court called a recess when the State's second witness finished testifying. On reconvening, the court told the parties that a juror had told the bailiff that he had a connection to the Barmore case:

> "THE COURT: We do have another issue, though. We have a juror who indicated that after [defense counsel] pointed out who the parents were and their position in the community, then he did recognize, uh, the parents of [defendant] as the pastors of a church, uh, that his cousin, uh, was shot at and killed."

The prosecutor responded that she "would think that we have an issue for cause at this point." The court agreed that that might be so and had Posley brought into the courtroom so that it could question him. Posley told the court that he had never had any contact with defendant or her parents but was aware of their tie to the shooting. However, he did not think that his connection to Barmore would affect his impartiality. The State suggested to Posley that he was upset; Posley responded that the incident had been traumatic, but he continued to assert his ability to be impartial.

¶ 8    The court allowed Posley to leave the courtroom, and the court and the parties considered the proper response:

> "[THE STATE]: Judge, given the *** Motions in Limine *** there is no way that, um, this juror would not have information about that incident. *** [W]e're asking that he be excused and an alternate be seated.
>
> [DEFENSE COUNSEL]: Well, we do not agree with that, Your Honor. *** [H]ad this come up in voir dire and he had said exactly what he had said here—that he could put it out of his mind, that he could be fair, that he would judge this same way had it not happened—I do not believe Your Honor would strike him for cause, having been asked those. *** And we would object to removing him.
>
> THE COURT: Well, you are right. I don't know that I would have struck him for cause, um, but I think that there is a chance that the State would have used a peremptory. *** [T]hat's why the Court [granted] the motion *** that there would be no referral to the Barmore case. ***
>
> Um—(pauses)—so, State, you are asking me to let you exercise a peremptory challenge at this time?
>
> [THE STATE]: Yes, Your Honor.
>
> *** And we would absolutely have used a peremptory had this information come forward, *** and we are asking to do that at this point.
>
> THE COURT: ***
>
> This information was brought out *** as a result of *** [the] defense attorney's behavior, uh who had these people identified in court, *** made a—fairly large deal of the fact that they were pastors in a local church, and, uh—and, in fact, had a witness identify them in court. So it is certainly an issue that I think should have been brought to the Court's attention ahead of time ***. ***

Over defense objection I'm gonna allow the State to use a peremptory."

The court seated an alternate juror, and the trial resumed with testimony from another of the State's witnesses.

¶ 9        The State's evidence tended to show that defendant made allegedly false reports twice. She made the first when Carter called her; Van Horn was a witness to at least some of that conversation. Defendant made the second report in-person to Turner and Tillmon-Listhrop, the law-enforcement officers. The school and the police investigated defendant's reports and concluded that they were false, largely because security recordings from a camera near the bathroom failed to show anyone resembling the assailant whom defendant had described. After the State rested, defendant testified. She described being threatened in the bathroom by a person with a gun.

¶ 10       The jury found defendant guilty on three of the four counts but acquitted her on the count alleging a false report to Van Horn. Defendant moved for a new trial, arguing, *inter alia*, that the court "erred in allowing the State to dismiss[ ] Mr. Posley[ ] as a juror[ ] because he was the cousin of Mark Baremore [*sic*]." She further argued that the court erred in allowing the State to use a peremptory challenge after the jury was sworn and the trial had started. The court denied defendant's motion, and she appealed.

¶ 11       On appeal, defendant "pray[ed for] an Order *** reversing her conviction[s] *** and ordering a new trial." We held that Posley's removal was structural error, thus mandating "automatic reversal." *People v. Brown*, 2013 IL App (2d) 111228, ¶ 30. In reaching our conclusion, we rejected the State's argument that the error was harmless because the trial court had the discretion to remove Posley for cause and because nothing suggested that the alternate who replaced Posley was biased; we concluded, among other things, that "the court [had] suggested that it was leaning against removal for cause." *Brown*, 2013 IL App (2d) 111228, ¶ 31. We vacated defendant's convictions and granted defendant's request for a new trial on those counts. *Brown*, 2013 IL App (2d) 111228, ¶ 30.

¶ 12       On remand, defendant, who had retained new counsel, moved to dismiss the remaining counts as barred under, *inter alia*, double-jeopardy principles. The court denied the motion, and defendant filed an appeal under Illinois Supreme Court Rule 604(f) (eff. Feb. 6, 2013) (permitting interlocutory appeal after a denial of a motion to dismiss based on former jeopardy). In the second appeal, defendant asked to reverse the denial based largely on one-act, one-crime principles. We affirmed the denial and again remanded the matter to the trial court. *People v. Brown*, 2015 IL App (2d) 140809-U.

¶ 13       On the second remand, defendant once more moved for the dismissal of the remaining three counts, again contending that double-jeopardy principles barred her retrial. This time, she argued that the "prosecutor took the unprecedented step of successfully recalibrating the jury composition from the agreed[-]upon panel" and that this was "specifically designed to provoke a mistrial in order to secure a second and perhaps more favorable opportunity to convict the defendant and/or to reconstitute the jury composition in order to secure a more favorable jury composition in order to convict the defendant." She further claimed that the court had denied the State's motion to remove Posley for cause and that it was only after that ruling that the prosecutor decided to try to use the remaining peremptory challenge. She suggested that the prosecutor's action was so clearly impermissible that it was explicable only if the prosecutor intended to goad her into moving for a mistrial.

¶ 14        The State responded that double-jeopardy principles do not bar a defendant's retrial when a reviewing court has held that a conviction is unsustainable due to trial error. It argued that nothing in the circumstances of Posley's excusal suggested that the prosecutor was trying to push defendant to seek a mistrial. Finally, it noted that she was the one who, in her first appeal, had asked for retrial.

¶ 15        In reply, defendant asserted that the State's decision to concede the impropriety of Posley's excusal was evidence that the prosecutor knew when she excused Posley that her actions were wrong. She contended that the prosecutor displayed animus toward her, which she suggested was a result of her links to the Barmore case. She argued that this animus was evinced by the prosecutor's vindictive overcharging in this case and by her persistence in seeking to remove Posley after the court denied her motion to remove him for cause. The State filed a surreply that, *inter alia*, objected to the "inflammatory language" of the reply.

¶ 16        The court denied defendant's motion on two bases: (1) that this court had "remanded the case specifically for a new trial, and that's what will happen" and (2) that the "allegations made in the defense motion to dismiss [were] unsupported by any evidence and [were] not [a] basis for the Court to *** dismiss [the] charge[s]." Defendant again filed an appeal under Illinois Supreme Court Rule 604(f) (eff. Feb. 6, 2013).

¶ 17                                    II. ANALYSIS

¶ 18        On appeal, defendant argues that the prosecutor's conduct was intended to goad her into moving for a mistrial—that is, she raises a claim of "intentional prosecutorial overreaching," although she does not use that phrase:

> "The prosecutor's intentional conduct, after this trial court denied the motion to remove Juror Posley for cause, in seeking to use (and then using) an impermissible peremptory challenge denied the defendant a fair trial and violated her due process and double jeopardy rights.
>
> The State intentionally committed error to try and [*sic*] force a mistrial in order to secure a better trial venire. The State, in the instant cause, was acting in bad faith."

She contends that it is immaterial that defense counsel did not seek a mistrial:

> "[Defendant] has found no case law to indicate that, after the prosecutor engages in conduct that was 'intended to provoke the defendant into moving for a mistrial', the defendant had to have moved for a mistrial immediately. Clearly, thus, what matters is whether *** the prosecutor's conduct was intended to elicit a mistrial, *i.e.*, by going against 100 years of Illinois law."

She asserts that the "nearly 'unprecedented' actions of the prosecutor" deprived her of a fair trial, and she suggests that the prosecutor wanted to harass or inconvenience her because the prosecutor was biased against her due to links both had to the Barmore matter. She asks that we order that her "motion to dismiss *** be granted" and remand the matter "for proceedings before a different judge."

¶ 19        The State responds that defendant's claim is both procedurally barred and without merit. Procedurally, it argues that defendant was "estopped" several times over to raise the matter on the second remand. First, citing *People v. Marchbanks*, 125 Ill. App. 3d 796 (1984), it asserts that, because defendant never moved for a mistrial, she cannot now properly ask to have retrial barred based on prosecutorial overreaching. Second, it asserts that, because defendant failed to

raise the claim of overreaching in earlier proceedings, and particularly in her original appeal, that claim is now barred by "collateral estoppel and res judicata." On the merits, it asserts that defendant did not show, and indeed could not show, that prosecutorial overreaching occurred. It argues that the prosecutor had nothing to gain by seeking to end the trial after only one[1] witness had testified and that, in any event, the court, not the prosecutor, had the idea of allowing the late use of the peremptory challenge.

¶ 20    In reply, defendant rejects as "incoherent" the State's argument that *res judicata* or collateral estoppel bars her claim. She argues that a trial with structural error is the equivalent of a mistrial, so that *Marchbanks* is inapplicable in a case in which structural error occurred. Further, defendant complains, "the State, for the first time in any briefing, has alleged that it was *the trial court's actions* (with the, apparent, implicit synergy of the State) that caused the necessity of the mistrial by, effectively, impermissibly placing its proverbial thumb on the scales of justice when the trial court proposed that a tainted juror could be substituted out via an unused peremptory challenge." (Emphasis in original and internal quotation marks omitted.) She adds that, to the extent that the court initiated the excusal, we should hold that *judicial* overreaching requires us to bar retrial.

¶ 21    We affirm. Each of the State's three arguments is potentially dispositive; we address two of them. First, we cannot let the procedural bar to defendant's claim go unaddressed: this is defendant's third appeal, and defendant does not acknowledge any procedural limits on her ability to raise new claims. We acknowledge that we cannot apply either of the preclusion doctrines—*res judicata* and collateral estoppel—that the State says bar defendant's claim, but we hold instead that defendant's claim is barred by the law-of-the-case doctrine. However, we also address the merits of defendant's claim for two reasons. The first is fairness: defendant did not have a full chance to address the applicability of the law-of-the-case doctrine. The second is to insist that arguments remain grounded in record facts. We hold that the record is devoid of support for defendant's claim. We need not address the applicability of *Marchbanks*, as both of our holdings are dispositive.

¶ 22    The State asks us to hold that defendant's claim is barred by "collateral estoppel and res judicata." We agree that a bar exists. However, because the claim arose in a remanded case, not a case with a final judgment, the applicable preclusion doctrine is law-of-the-case, not *res judicata* or collateral estoppel. Moreover, when the trial court commented that it was denying defendant's motion because this court had "remanded the case specifically for a new trial, and that's what will happen," it too was applying the law-of-the-case doctrine. However, identity of the applicable doctrine aside, the result is as the State suggests: defendant could not raise her claim on the second remand.

¶ 23    *Res judicata* is inapplicable here; it applies only in cases in which there has been a relevant final judgment, which has not occurred in this case. See *Kasny v. Coonen & Roth, Ltd.*, 395 Ill. App. 3d 870, 873 (2009) (the existence of "a final judgment on the merits rendered by a court of competent jurisdiction" is one element of *res judicata*). There has been no final judgment on defendant's convictions. When the existence of preclusion by *res judicata* is at issue, a judgment is a "final judgment" only if it terminates the litigation on the merits such that, absent

---

[1]The State is incorrect on this minor point. Both Carter *and* a second witness had testified before Posley was excused. However, that second witness's testimony was unremarkable; we cannot see how anything in it could have caused the prosecutor to want a mistrial.

an intervention by a higher court, the only thing left to do is to execute the judgment. *People v. Anderson*, 2015 IL App (2d) 140444, ¶ 26. An appellate court order that remands a matter for further proceedings is thus not a final judgment as to that matter, so it lacks *res judicata* effect. *Anderson*, 2015 IL App (2d) 140444, ¶ 26. Of course, defendant's *acquittal* is final, but the original proceeding did not present an opportunity to litigate double-jeopardy issues. It thus has no *res judicata* effect here. *Cf. Kasny*, 395 Ill. App. 3d at 873 (*res judicata* bars issues that could have been raised in the original proceeding). Collateral estoppel is inapplicable here for the same reason that *res judicata* is: it requires a "final judgment on the merits in the prior adjudication." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390 (2001).

¶ 24    Although *res judicata* and collateral estoppel are inapplicable here, the State has merely invoked the wrong preclusion principles, as the law-of-the-case doctrine applies. "The law-of-the-case doctrine, like the other preclusion doctrines of *res judicata* and collateral estoppel, prevents a defendant from ' "taking two bites out of the same appellate apple." ' " *Anderson*, 2015 IL App (2d) 140444, ¶ 27 (quoting *People v. Tenner*, 206 Ill. 2d 381, 395 (2002), quoting *People v. Partee*, 125 Ill. 2d 24, 37 (1988)).

> "The rule is that no question which was raised *or could have been raised* in a prior appeal on the merits can be urged on subsequent appeal and those not raised are considered waived. [Citations.] The rule obtains when a question sought to be raised the second time around is of a constitutional nature. [Citation.] In such a case it is presumed that appellant has no objections to urge against the record except those which have been presented and he will not be permitted to assign such errors on a second appeal. [Citation.] *** [A] *party will not be permitted to have his cause heard part at one time and the residue at another*." (Emphases added.) *Kazubowski v. Kazubowski*, 45 Ill. 2d 405, 413-14 (1970).

In brief, "the failure of a party to challenge a legal decision when it has the opportunity to do so renders that decision the law of the case for future stages of the same litigation, and the party is deemed to have waived the right to challenge that decision at a later time." *Reich v. Gendreau*, 308 Ill. App. 3d 825, 829 (1999). Whether the law-of-the-case doctrine should bar a claim is an issue of law; our review is thus *de novo*. *In re Christopher K.*, 217 Ill. 2d 348, 363-64 (2005).

¶ 25    Here, nothing prevented defendant from raising her intentional-overreaching claim earlier. It was thus barred under the law-of-the-case doctrine. To be sure, defendant implies that she did not fully understand the extent of the prosecutor's animus when she first appealed, so that she did not recognize then that she had the claim. We are necessarily skeptical of the idea that trial counsel was the target of an attempt to goad him to seek a mistrial, but that it took different counsel to recognize that the attempt had occurred. Beyond that, defendant fails completely to explain why she did not raise her claim on the first remand.

¶ 26    In any event, we agree with the trial court that the claim fails on its merits. We look to *Oregon v. Kennedy*, 456 U.S. 667, 671-72 (1982), for the relevant law:

> "The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense. [Citation.] As a part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal.' [Citation.] The Double Jeopardy Clause, however, does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Kennedy*, 456 U.S. at 671-72.

Typically, the clause does not protect a defendant from retrial when he or she has moved for a mistrial. Indeed, it does not protect a defendant from retrial when, despite his or her objection, a mistrial has been declared because the jury cannot reach a verdict or in other instances of "manifest necessity." *Kennedy*, 456 U.S. at 672-73. The *Kennedy* Court recognized a single exception to that rule, holding that the clause bars retrial when the prosecutor overreached with the intention of provoking the defendant to move for a mistrial. This exception is narrow: "Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, *** does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Kennedy*, 456 U.S. at 675-76.

¶ 27 Defendant has failed entirely to support her claim that the prosecutor attempted to provoke her to seek a mistrial. The argument at the heart of defendant's claim is that, upon the court's denial of her motion to remove Posley for cause, the prosecutor proposed the midtrial use of a peremptory challenge with the specific purpose of provoking defendant to seek a mistrial. The record belies each assertion of fact within that argument. First, the record shows that the procedural facts are not as defendant describes them. Second, the consequences of the error allow us to infer with near certainty that the error was not deliberate and that no one could have intended it to goad defendant into moving for a mistrial.

¶ 28 First, as we noted in defendant's original appeal, the court never denied a State motion to remove Posley for cause; indeed, the State never made such a motion. The court's only comment on how it might decide such a motion came in response to a hypothetical put forward by defense counsel, who argued that the court would have denied a State motion to dismiss Posley for cause had his link to Barmore come out at *voir dire*. The court responded that it did not "know that [it] would have struck him for cause." Only then did the court suggest that the State might still use a peremptory challenge; it asked, "Um—(pauses)—so, State, you are asking me to let you exercise a peremptory challenge at this time?" Although that question might have been spurred by the prosecutor's assurance that, had Posley's link to Barmore come out at *voir dire*, it would have exercised a peremptory challenge to remove him, the court's question is the record's first suggestion of an *in-trial* use of a peremptory challenge. To be sure, the prosecutor immediately adopted the idea, but the idea clearly came from the court.

¶ 29 In response to the State's citing these facts, defendant asks us to consider the possibility of intentional *judicial* overreaching. See *Marchbanks*, 125 Ill. App. 3d at 798 (suggesting that judicial overreaching to induce a defendant to seek a mistrial should be treated in the same way that similar prosecutorial overreaching is). However, that modification to defendant's argument does not get around her second factual problem: that she has no evidence that anyone was trying to goad her to move for a mistrial.

¶ 30 The nature and circumstances of the error effectively preclude the possibility that either the prosecutor or the judge deliberately caused it with the intention of goading defendant into seeking a mistrial. Defendant points to the seriousness and rarity of the error as indications that the error was deliberate, but she cannot explain how either the seriousness or the rarity might indicate the intent to drive defendant to ask for a mistrial. Indeed, the nature of the error created circumstances in which defendant had every reason to want the jury to reach a verdict. If a trial contains a structural error, any resulting convictions are *per se* reversible. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) (structural error is second-prong plain error, and when it is present, a defendant need neither have preserved the error nor show prejudice to get a reversal).

Acquittals, however, cannot be reversed on appeal, which is why a trial with structural error cannot be equated to a mistrial. See, *e.g.*, *Bravo-Fernandez v. United States*, 580 U.S.___, ___, 137 S. Ct. 352, 358 (2016) (the government cannot seek review of an acquittal, even if it is the result of patent error). Thus, the burden of the trial aside, the presence of structural error created a no-lose situation for defendant and a no-win situation for the State. Even if we assume that the prosecutor or the judge was driven by animus, it defies plausibility to think that either would deliberately create such a situation.[2]

¶ 31    Moreover, getting the court to declare a mistrial would not have reversed any prejudice that defendant suffered due to Posley's removal. Although defense counsel wanted to retain Posley, that was evidently because he believed that Posley was favorable to defendant and not because anything suggested that the alternate was more unfavorable than a typical juror would be. Getting the court to declare a mistrial would not have brought back Posley.

¶ 32    As defendant's claim is both barred under the law-of-the-case doctrine and without merit, we affirm the trial court's denial of defendant's motion to dismiss, and we remand the matter for a new trial. We acknowledge that defendant has requested that we order that the case be assigned to a judge not involved in the case's earlier stages. Because that request rests entirely on the idea that the error was the deliberate result of animus and because our analysis makes clear why we do not credit the notion that the error was deliberate, we also deny that request.

¶ 33                                   III. CONCLUSION

¶ 34    For the reasons stated, we affirm the denial of defendant's motion to dismiss based on double jeopardy, and we remand the matter for retrial. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 35    Affirmed and remanded.

---

[2]Defendant's argument is more logical if it is read to suggest that the prosecutor or the court was seeking to harass defendant by forcing her to undergo a second trial. If that is what she is arguing, she cannot get past the holding in *Kennedy*, which specifically limited the intentional-overreaching rule to cases in which there was conduct intended to goad the defendant to seek a mistrial. In any event, for the reasons we have set out, a prosecutor or court with such a scheme of harassment in mind would not want to introduce *structural* error.