NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180613-U

NO. 4-18-0613

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 3, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| GARY W. BROWN, | ) | No. 10CF1857 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Steigmann and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: Appellate counsel's motion to withdraw is granted and the trial court's judgment is affirmed.

¶ 2    Defendant, Gary W. Brown, pleaded guilty to aggravated criminal sexual assault (720 ILCS 5/12-14(a)(2) (West 2010)) and, pursuant to a negotiated plea agreement with the State, was sentenced to 15 years in prison. He appeals the trial court's denial of an amended motion to withdraw his guilty plea and vacate his waiver of his right to a jury trial.

¶ 3    On appeal, the Office of the State Appellate Defender (OSAD) was appointed to represent defendant. OSAD has filed a motion to withdraw as appellate counsel, citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and alleging there are no potentially meritorious issues for review. Because this appeal involves a direct appeal from the trial court's judgment and not a

postconviction collateral attack, we characterize OSAD's motion to withdraw as one brought pursuant to *Anders v. California*, 386 U.S. 738 (1967), rather than *Finley*. Additionally, we grant OSAD's motion and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5          In December 2010, the State charged defendant with two counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(2) (West 2010)) (counts I and II), one count of aggravated battery (*id.* § 12-4(b)(8)) (count III), and one count of burglary (*id.* § 19-1(a)) (count IV). In connection with the criminal-sexual-assault counts, the State alleged that while displaying a dangerous weapon, *i.e.*, a hammer with rubber ends, defendant twice placed his sex organ in the sex organ of the victim, T.T. In August 2011, the State filed a petition to have defendant declared a sexually dangerous person under the Sexually Dangerous Persons Act (725 ILCS 205/0.01 *et seq.* (West 2010)).

¶ 6          In April 2013, defendant pleaded guilty to one count of aggravated criminal sexual assault (count I) pursuant to a negotiated plea agreement with the State. In exchange for his guilty plea, the parties agreed defendant would receive a 15-year prison sentence and that the State would dismiss both the remaining charges against defendant (counts II, III, and IV) and its petition to have defendant declared a sexually dangerous person. At the plea hearing, the trial court admonished defendant regarding the rights he would be giving up by pleading guilty, that the applicable sentencing range was 6 to 60 years due to defendant's prior criminal history, that "there would also be a Mandatory Supervised Release [(MSR)], or parole term, of an indeterminate 3 years to natural life," and that defendant's sentence was "an 85[%] sentence by law." Defendant asserted he understood each of the court's admonishments and wished to plead guilty.

¶ 7        The State presented a factual basis that T.T. would testify, on December 18, 2010, she was speaking with defendant when he "indicated he *** wanted to have sexual intercourse with her." T.T. refused and "struggled to get away." The two "ended up" in a vehicle where defendant struck T.T. on the head with a hammer. T.T. was incapacitated and "in a great deal of pain" but did not lose consciousness. After striking T.T. with the hammer, defendant engaged in an act of sexual intercourse with her inside the vehicle. The State asserted its evidence would also show that forensic testing on samples taken from T.T.'s vaginal area were a deoxyribonucleic acid (DNA) match to standards taken from defendant. It further represented that the police searched the vehicle defendant had been using at the time of the offense and found a hammer that was consistent with T.T.'s description of the hammer defendant used. Additionally, a physical examination of T.T. showed a laceration on her head that was consistent with her being struck by an object and "scuff marks and scratches" on her body that were consistent with a struggle.

¶ 8        On further questioning by the trial court, defendant asserted his counsel had answered any questions he had about the case to his satisfaction; he was pleading guilty of his own free will; he had no questions regarding the charges against him, his rights, the possible sentences, or anything else; and he wanted to continue to plead guilty. The court then accepted defendant's plea, finding it was knowingly and voluntarily made, and sentenced him to 15 years in prison with an "indeterminate [MSR term of] from 3 years to natural life."

¶ 9        In May 2013, defendant filed a *pro se* motion to withdraw his guilty plea and vacate his sentence. He alleged his attorney, Howard R. Baker, provided ineffective assistance of counsel; he did not fully understand that he could be determined to be "a sexually dangerous person" in the future and "do more time" after serving his 15-year prison sentence; and that he did not understand

- 3 -

the trial court's MSR admonishments. The same month, defendant's attorney filed a second motion to withdraw plea and vacate sentence on defendant's behalf. Defendant's claims in connection with that motion essentially reiterated the claims of his *pro se* filing, except for his claim alleging Baker's ineffectiveness.

¶ 10 In October 2013, the trial court conducted a hearing in the matter. Defendant testified that when pleading guilty, he did not understand that his MSR term could be for an indeterminate length of time from three years to life. He stated he did not understand the word "indeterminate" and would not have agreed to plead guilty had he understood that "parole could be for life." Defendant also testified that he did not understand "the possibility of being found to be sexually violent" and, if he had, he would not have pleaded guilty. On cross-examination, defendant maintained that he did not ask the trial judge what "indeterminate" meant because "[i]t didn't cross [his] mind." He also acknowledged that he had discussions with Baker about the possibility of commitment as a sexually violent person. However, defendant asserted that he did not understand what Baker was telling him. Specifically, he did not understand that his confinement could be prolonged.

¶ 11 Ultimately, the trial court denied defendant's request to withdraw his plea and vacate his sentence and he appealed. On appeal, defendant argued the court improperly failed to conduct a *Krankel* inquiry (*People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984)) into his *pro se* postplea claims of ineffective assistance of counsel and the State conceded the issue. *People v. Brown*, 2015 IL App (4th) 130905-U, ¶ 16. This court accepted the State's concession and remanded the matter to the trial court so that it could conduct an inquiry into defendant's *pro se* claims. *Id.* ¶ 19.

¶ 12        On remand, a new attorney, Scott A. Rueter, was appointed to represent defendant. In March 2017, with Rueter's assistance, defendant filed an amended motion to withdraw his guilty plea and vacate his jury trial waiver. Defendant alleged (1) his jury trial waiver was not voluntarily or knowingly executed because Baker did not inform defendant of the ramifications or consequences of his waiver; (2) his guilty plea was not voluntarily or knowingly entered "because defendant felt he had no option but to enter a plea of guilty based upon the representations made to him by" Baker; (3) Baker did not inform defendant that he faced the possibility of commitment as a sexually violent person after serving his 15-year prison sentence; and (4) Baker did not adequately inform defendant regarding MSR, causing defendant not to understand the trial court's MSR admonishments.

¶ 13        In June 2017, the trial court conducted a hearing on defendant's amended motion. Defendant testified on his own behalf that at the time he pleaded guilty, he was not aware that he could be committed as a sexually violent person after serving his 15-year sentence in the Illinois Department of Corrections (DOC). According to defendant, Baker represented to him that if his case went to trial, he "could be committed" but, if he pleaded guilty, "then whatever the plea agreement was, that would be it." Defendant asserted he would not have pleaded guilty if he had known that he "could be committed as a sexually violent person."

¶ 14        Defendant also asserted that at the time he pleaded guilty, he did not understand what was being said about MSR. He acknowledged that the trial court advised him that his MSR term could be "anywhere [from] three years to natural life." However, the court used the word "indeterminate," which defendant asserted he did not understand. Defendant also testified that Baker did not discuss MSR with him and had not informed him of the "possibility of up to life in

parole." Again, defendant stated he would not have pleaded guilty if he had known that he faced the possibility of an MSR period of natural life.

¶ 15        The State elected not to cross-examine defendant or present evidence, believing that State participation in the proceedings would be improper because the matter had been remanded for a *Krankel* inquiry into what were, originally, defendant's *pro se* ineffective-assistance-of-counsel claims. The trial court then called Baker as the court's own witness. Baker testified that he met with defendant numerous times regarding the petition the State filed to have him declared a sexually dangerous person. He asserted he explained "what that meant" to defendant several times and that it was "basically indeterminate time of imprisonment or in a hospital facility to get treatment." Baker stated defendant "was not comfortable with that scenario." Baker then noted that the State offered to dismiss its petition as part of the plea agreement and testified as follows:

> "There was discussion about at the time that it was feasible that [DOC] could file a petition to declare him sexually violent, but that would mean he'd be evaluated by doctors, they'd make some determination. [Defendant] was pretty adamant that there was nothing wrong with him, so that didn't bother—it bothered him to admit he was sexually dangerous. That was troublesome to him.
>
> In the numerous discussions I had, I am not honestly sure I ever got the point across that this was still possible. I tried numerous times. [Defendant] felt and maintained steadfastly that he wasn't sexually dangerous or violent."

¶ 16        Baker next testified that he had no independent recollection of discussing the applicable MSR term with defendant. However, he believed that it was "unlikely" that he would not have had such a discussion "with a client of that scenario." Baker then recalled that defendant was

admonished by the trial court with respect to MSR and that the issue was addressed in connection with defendant's original motion to withdraw his guilty plea.

¶ 17 The trial court noted it was ruling on two matters—whether Baker was ineffective and whether to allow defendant's amended motion to withdraw his guilty plea, which incorporated his ineffective-assistance claims. Initially, it stated that after listening to defendant's testimony and Baker's response, it found Baker was not ineffective in his representation of defendant. The court then denied defendant's amended motion, finding defendant's guilty plea was knowing and voluntary. In so finding, the court determined that the issue of whether defendant faced future confinement as a sexually violent person was "a collateral issue" and noted that defendant had been admonished regarding the applicable MSR term.

¶ 18 Again, defendant appealed the trial court's decision. In October 2017, this court allowed an agreed motion for summary remand for the filing of an Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) certificate. *People v. Brown*, 4-17-0448 (2017) (order for summary remand). We remanded the matter to the trial court "for the filing of a *** Rule 604(d) certificate, *** the opportunity to file a new post-plea motion, if counsel concludes that a new motion is necessary, a new hearing on the motion, a new judgment, a new notice of appeal, and strict compliance with the requirements of Rule 604(d)." *Id.*

¶ 19 In February 2018, on remand, Rueter filed a new Rule 604(d) certificate. His certificate stated as follows:

> "Scott A. Rueter, being first duly sworn upon his oath, deposes and states as follows:
>
> 1. I am an attorney licensed to practice law in the State of Illinois.

2. I have been appointed to represent Defendant in connection with his efforts to withdraw his guilty plea in the above case.

3. I have consulted with Defendant by mail and in person to ascertain his contentions of error in the sentence and in the entry of the plea of guilty.

4. I have examined the trial court's file in this matter and a report of the proceedings with respect to the plea of guilty and the imposition of sentence upon the Defendant.

5. I have prepared a motion to withdraw the plea of guilty on the defendant's behalf, and outlined therein any issues necessary for the adequate presentation of any defects in those proceedings."

¶ 20 In May 2018, defendant filed a new amended motion to withdraw his guilty plea and vacate his jury trial waiver. He alleged that his jury trial waiver was not voluntary or knowing because he "was not informed of the ramifications or consequences of his waiver by his counsel," he did not understand the ramifications of his guilty plea, and his plea "was a void sentence in that such plea would require an additional period of 10 years to be mandatorily added to the sentence, which was not done or taken into account during the plea." In June 2018, the State filed a response to the amended motion.

¶ 21 In August 2018, Rueter filed a second Rule 604(d) certificate that was identical to the previous one. The same day, the trial court conducted a hearing on defendant's motion. The parties relied on evidence presented at the hearing on defendant's previous amended motion and presented arguments to the court. Ultimately, the court denied the motion. It stated that after reviewing the record and transcripts in the case, it found defendant's guilty plea was knowingly and

voluntarily made. The court also rejected defendant's void-sentence argument. It first determined that a 10-year add-on was not required for the offense to which defendant pleaded guilty given the factual basis that was presented by the State during the plea proceedings. Second, it noted that the void sentence rule was abolished by the supreme court's decision in *People v. Castleberry*, 2015 IL 116916, 43 N.E.3d 932.

¶ 22        This appeal followed. As stated, OSAD was appointed to represent defendant on appeal. In March 2019, it filed a motion to withdraw as appellate counsel and attached a memorandum of law in support, identifying issues that might arguably support an appeal but concluding they had no merit. Proof of service of the motion on defendant has been shown. Additionally, this court granted defendant leave to file a response to the motion and he has responded. The State has also filed an appellee's brief. After examining the record and executing our duties in accordance with *Anders*, we grant OSAD's motion and affirm the trial court's judgment.

¶ 23                                II. ANALYSIS

¶ 24        As noted, OSAD filed its motion to withdraw as appellate counsel citing *Finley*, 481 U.S. 551. We note *Finley*, 481 U.S. at 556, is applicable in the context of postconviction collateral attacks while *Anders*, 386 U.S. at 744, applies when an appointed attorney moves to withdraw in a direct appeal. Because this case involves direct review of the denial of defendant's amended motion to withdraw his guilty plea—albeit in a third direct appeal—and not a postconviction collateral attack, *Anders* applies. Here, OSAD's memorandum meets *Anders* requirements. Accordingly, we characterize its filing as a motion to withdraw pursuant to *Anders*.

¶ 25        On review, OSAD identifies issues of potentially arguable merit as the (1) substantive allegations of defendant's May 2018 amended motion to withdraw his guilty plea and vacate

his jury trial waiver and (2) sufficiency of his counsel's most recent Rule 604(d) certificate. It concludes that both issues are without arguable merit and we agree.

¶ 26    In connection with his May 2018 motion, defendant initially argued his jury trial waiver was not voluntary and knowing because Baker did not inform him of the ramifications or consequences of his waiver. He also alleged that he did not fully understand the ramifications of pleading guilty. Specifically, defendant repeatedly asserted below that he was not informed of the possibility that he could be committed as a sexually violent person after pleading guilty and serving his 15-year prison sentence. He also maintained that he did not understand that he could be subject to an MSR term of natural life. On appeal, defendant reiterates these claims in his response to OSAD's motion to withdraw.

¶ 27    We note that "[a] defendant has no absolute right to withdraw his guilty plea." *People v. Hughes*, 2012 IL 112817, ¶ 32, 983 N.E.2d 439. "Rather, he must show a manifest injustice under the facts involved." *Id.* "Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial." *Id.* "[T]he decision to grant or deny a motion to withdraw a guilty plea rests in the sound discretion of the circuit court and, as such, is reviewed for abuse of discretion." *Id.*

¶ 28    Due process generally requires that for a defendant to knowingly and voluntarily plead guilty, he or she must be advised of the *direct* consequences of a guilty plea. *Id.* ¶ 35. "[A] direct consequence of a guilty plea is one which has a definite, immediate and largely automatic effect on the range of a defendant's sentence." *Id.* "[A] defendant need not be advised by the trial court of the *collateral* consequences of a guilty plea." (Emphasis added.) *Id.* ¶ 36. "A collateral

consequence is one which the circuit court has no authority to impose, and results from an action that may or may not be taken by an agency that the trial court does not control." (Internal quotation marks omitted.) *Id.*

¶ 29 Accordingly, the trial court must admonish a defendant who pleads guilty pursuant to a negotiated plea agreement regarding the minimum and maximum sentence prescribed by law, including the applicable MSR term. *People v. Boykins*, 2017 IL 121365, ¶ 13, 93 N.E.3d 504 (citing *People v. Whitfield*, 217 Ill. 2d 177, 194-95, 840 N.E.2d 658, 669 (2005)). By contrast, because the possibility of involuntary commitment under the Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West 2010)) is a collateral consequence of a guilty plea, the trial court is not obligated to advise the defendant of the possibility prior to accepting a plea. *Hughes*, 2012 IL 112817, ¶¶ 37-40.

¶ 30 However, the supreme court has held that "defense counsel has a minimal duty to advise a defendant who pleads guilty to a triggering offense subject to the provision of the Sexually Violent Persons Commitment Act that he will be evaluated for and may risk involuntary commitment after completing his prison term." *Id.* ¶ 60. For a defendant to obtain relief based on a claim that his attorney failed to properly advise him prior to pleading guilty, the defendant must establish ineffective assistance under the *Strickland* standard (*Strickland v. Washington*, 466 U.S. 668 (1984)) by showing "counsel's performance was deficient and that the deficient performance resulted in prejudice." *Id.* ¶ 44.

¶ 31 Here, the first issue presented by defendant's May 2018 amended motion concerned whether Baker's representation of defendant was ineffective because he did not inform defendant of the ramifications or consequences of his decision to waive a jury trial and plead guilty.

Ultimately, however, the record refutes any contention that Baker's performance was deficient or that defendant suffered prejudice. In response to defendant's allegations of ineffectiveness, Baker testified and recalled discussing with defendant the State's petition to have him declared sexually dangerous and "what that meant." He also recalled that at the time defendant was contemplating pleading guilty, "[t]here was discussion *** that it was feasible that [DOC] could file a petition to declare him sexually violent." Further, although Baker had no independent recollection of discussing the applicable MSR term with defendant, he found it "unlikely" that he would not have done so. Moreover, Baker recalled, and the record reflects, that the trial court fully admonished defendant prior to accepting his guilty plea regarding the MSR term that applied. The record shows defendant asserted he understood the court's admonishments and that he had no questions.

¶ 32        After reviewing the record and considering the parties' arguments, the trial court found no merit to defendant's ineffective-assistance claims. The record supports that finding. As a result, the court did not err in rejecting defendant's ineffectiveness claims or abuse its discretion by denying his May 2018 amended motion to withdraw his guilty plea and vacate his jury trial. On appeal, OSAD is correct in finding no arguable merit to defendant's ineffective-assistance claim.

¶ 33        The second issue presented in connection with defendant's May 2018 amended motion was that he did not fully understand the ramifications of pleading guilty because he did not understand from the trial court's admonishments that he could face future commitment as a sexually violent person or the applicable MSR term. As stated above, the prospect of commitment under the Sexually Violent Persons Commitment Act is a collateral consequence and the trial court was under no obligation to advise defendant of that possibility at the time he pleaded guilty.

Further, the record of the plea hearing reflects that the court provided appropriate MSR admonishments to defendant. Defendant asserted he understood the admonishments given to him and had no questions.

¶ 34    Additionally, both of these issues were raised in connection with defendant's original, May 2013 motion to withdraw his guilty plea and vacate sentence. The trial court considered and rejected the issues, denying defendant's motion. Although defendant appealed within 30 days of that judgment, he challenged only the court's failure to conduct any inquiry into his *pro se* ineffective-assistance claims. We note that "the law of the case doctrine bars relitigation of an issue already decided in the same case." *People v. Tenner*, 206 Ill. 2d 381, 395, 794 N.E.2d 238, 247 (2002). Specifically, "the failure of a party to challenge a legal decision when it has the opportunity to do so renders that decision the law of the case for future stages of the same litigation, and the party is deemed to have waived the right to challenge that decision at a later time." (Internal quotation marks omitted.) *People v. Brown*, 2017 IL App (2d) 160971, ¶ 24, 92 N.E.3d 968. Here, the trial court decided issues regarding whether defendant's plea was knowingly and voluntarily entered given the admonishments he received, and defendant did not challenge that portion of the court's decision in his initial appeal. Accordingly, the law-of-the-case doctrine barred him from attempting to relitigate those issues, either before the trial court on remand or now in this third appeal.

¶ 35    Next, in his May 2018 amended motion, defendant also argued that his sentence was void. He asserted that the offense to which he pleaded guilty required a 10-year add-on to his sentence that the parties' plea agreement did not take into account, resulting in a void sentence. However, as the trial court found and OSAD asserts in its motion to withdraw, the supreme court

has abolished the void sentence rule as constitutionally unsound. *Castleberry*, 2015 IL 116916, ¶ 19.

¶ 36    Further, as argued by the State, defendant's additional assertions on appeal (in his response to OSAD's motion to withdraw as counsel) that his sentence was "illegal" or "invalid" because it did not include the 10-year add-on are also without merit. The record shows defendant was originally charged with two counts (counts I and II) of aggravated criminal sexual assault with the charging instrument referencing section 12-14(a)(2) of the Criminal Code of 1961 (Code) (720 ILCS 5/12-14(a)(2) (West 2010)). Both counts alleged that, "while displaying a dangerous weapon, a hammer with rubber ends, [defendant] knowingly committed a criminal sexual assault *** against" T.T.

¶ 37    Relevant to this appeal, the text of section 12-14(a) provides as follows:

"The accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and any of the following aggravating circumstances existed during *** the commission of the offense:

(1) the accused displayed, threatened to use, or used a dangerous weapon, other than a firearm, or any object fashioned or utilized in such a manner as to lead the victim under the circumstances reasonably to believe it to be a dangerous weapon; or

(2) the accused caused bodily harm *** to the victim[.]" *Id.* § 12-14(a).

Additionally, under the Code, convictions for aggravated criminal sexual assault under both sections 12-14(a)(1) and 12-14(a)(2) were Class X felonies; however, convictions under section 12-14(a)(1) required 10 years to be added to any term of imprisonment imposed by the trial court. *Id.*

§ 12-14(d)(1).

¶ 38    Here, for both aggravated-criminal-sexual-assault counts, the charging instrument referenced section 12-14(a)(2) of the Code but defined the offense consistently with section 12-14(a)(1), which would have required the 10-year add-on to any sentence imposed. Ultimately, however, the record supports a finding that defendant pleaded guilty to an offense of aggravated criminal sexual assault under section 12-14(a)(2), requiring no add-on.

> "[T]he State and a defendant have the right to negotiate what facts are presented to the court in support of a plea agreement. Those facts must be statutorily consistent with the agreed sentence or sentencing range. The factual basis is the principal means of placing those facts before the court." *People v. Hubbard*, 2012 IL App (2d) 120060, ¶ 17, 978 N.E.2d 719.

¶ 39    In this instance, the State's factual basis was in conformity with an offense brought under section 12-14(a)(2), which required "bodily harm" as an element of the offense. The facts submitted by the State were also statutorily consistent with the agreed upon 15-year prison sentence. See 730 ILCS 5/5-4.5-25(a) (West 2010) (providing that the applicable sentencing range for a Class X felony is 6 to 30 years' imprisonment). Under these circumstances, defendant's sentence was neither "invalid" nor "illegal."

¶ 40    Finally, on review, OSAD argues that any claim with respect to the most recent Rule 604(d) certificate filed by defendant's attorney would also have no arguable merit. "Rule 604(d) governs the procedure to be followed when a defendant wishes to appeal from a judgment entered upon a guilty plea." *In re H.L.*, 2015 IL 118529, ¶ 7, 48 N.E.3d 1071. It requires that a defendant's attorney file a certificate with the trial court, asserting the following:

"1. I have consulted with the Defendant in person, by mail, by phone, or by electronic means to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence;

2. I have examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing; and

3. I have made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017), Art. VI Forms Appendix.

An attorney must strictly comply with Rule 604(d)'s certification requirement. *H.L.*, 2015 IL 118529, ¶ 8.

¶ 41     Here, the record reflects strict compliance by defendant's attorney with Rule 604(d)'s requirements. Thus, there is no arguable merit to any claim based upon the insufficiency of counsel's most recent Rule 604(d) certificate.

¶ 42                              III. CONCLUSION

¶ 43     For the reasons stated, we grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 44     Affirmed.