NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200558-U

NO. 4-20-0558

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 31, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| ARKEE A. WOODSON, | ) | No. 14CF352 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James R. Coryell, |
| | ) | Judge Presiding. |

_____

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Although, generally, all proceedings under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2018)) automatically end when the minor turns 21, the supreme court's decision in *People v. Fort*, 2017 IL 118966, ¶ 41, establishes an exception to that rule: a proceeding for a discretionary transfer from juvenile court to adult court for sentencing (705 ILCS 405/5-130(1)(c)(ii) (West 2018)) may be conducted even though the minor has turned 21.

(2) On remand, in a hearing to vacate the sentences, the State renewed a motion it filed before the vacation of the sentences, thereby fulfilling a condition, in the appellate court's remand order, that the State file the motion within 10 days after the vacation of the sentences.

(3) In this subsequent appeal, the law of the case bars defendant from raising an other-crimes issue that he could have raised in the previous appeal.

(4) Because of the lack of a contemporaneous objection and because of the omission of the issue in the postsentencing motion, defendant has forfeited his contention that the circuit court failed to consider the youth-related mitigating factors in section 5-4.5-105(a) of the Unified Code of Corrections (730 ILCS 5/5-4.5-105(a) (West 2018)), and absent a clear or obvious error, the doctrine of plain error does not avert the forfeiture.

¶ 2   In the Macon County circuit court, a jury found defendant, Arkee A. Woodson, guilty of some violent offenses, which he committed in a single incident at the age of 15. Pursuant to section 5-130(1)(c)(ii) of the Juvenile Court Act of 1987 (hereinafter, the Juvenile Court Act or the Act) (705 ILCS 405/5-130(1)(c)(ii) (West 2016)), the court granted a petition by the State to transfer Woodson's case from juvenile court to adult court for sentencing. (We are simplifying the procedural history. We will provide a more detailed account in a moment.) After transferring the case to adult court, the court sentenced Woodson to 12 years' imprisonment for attempted first degree murder (720 ILCS 5/8-4(a), (c)(1)(D), 9-1(a)(1) (West 2014)) and a consecutive term of 12 years' imprisonment for armed robbery (*id.* § 18-2(a)(4)). Woodson appeals on three grounds.

¶ 3   First, Woodson argues that, instead of transferring his case from juvenile court to adult court for sentencing, the circuit court should have dismissed the proceedings against him because the State failed to file a motion for such a transfer. When we look at the record, however, we find that on July 25, 2019, the State filed a "Petition to Set a Hearing to Determine If Defendant Should Be Sentenced as a Juvenile or an Adult" and that the State renewed the motion on October 29, 2019.

¶ 4   Second, Woodson argues that the circuit court abused its discretion by admitting evidence, in his jury trial, that he committed an additional, uncharged offense of attempted armed robbery. We hold that the law of the case bars this argument.

¶ 5   Third, Woodson argues that in determining the sentence, the circuit court failed to consider the juvenile sentencing factors in section 5-4.5-105(a) of the Unified Code of Corrections (730 ILCS 5/5-4.5-105(a) (West 2018)). Because Woodson never raised this issue in the circuit court, this issue is procedurally forfeited. Absent a clear or obvious error, the doctrine of plain error does not avert the forfeiture. We find no clear or obvious error, considering that it was

explicitly on the basis of the factors in section 5-4.5-105(a) that the court refrained from imposing a firearm enhancement to Woodson's prison sentences. See 720 ILCS 5/8-4(c)(1)(D), 18-2(a)(4), (b) (West 2016).

¶ 6        Therefore, we affirm the judgment.

¶ 7                            I. BACKGROUND

¶ 8        On March 31, 2014, the State charged Woodson, who was born on October 21, 1998, with attempted first degree murder (*id.* §§ 8-4(a), (c)(1)(D), 9-1(a)(1)), aggravated battery with a firearm (*id.* § 12-4.2(a)(1)), and armed robbery (*id.* § 18-2(a)(4)). On the date of those alleged offenses, March 15, 2014, he was 15 years old.

¶ 9        On March 15, 2014, when Woodson committed the offenses, section 5-130(1)(a) of the Juvenile Court Act provided as follows:

"(1)(a) The definition of delinquent minor under Section 5-120 of this Article [(705 ILCS 405/5-120 (West 2014))] shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with: (i) first degree murder, (ii) aggravated criminal sexual assault, (iii) aggravated battery with a firearm as described in Section 12-4.2 or subdivision (e)(1), (e)(2), (e)(3), or (e)(4) of Section 12-3.05 [(720 ILCS 5/12-4.2, 12-3.05(e)(1), (2), (3), (4) (West 2014))] where the minor personally discharged a firearm as defined in Section 2-15.5 of the Criminal Code of 1961 or the Criminal Code of 2012 [(*id.* § 2-15.5)], (iv) armed robbery when the armed robbery was committed with a firearm, or (v) aggravated vehicular hijacking when the hijacking was committed with a firearm.

These charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State." 705 ILCS 405/5-130(1)(a) (West 2014).

Section 5-120 defined a "delinquent minor" as "any minor who prior to his or her 18th birthday has violated or attempted to violate, regardless of where the act occurred, any federal, State, county[,] or municipal law or ordinance." *Id.* § 5-120. Because Woodson was at least 15 years of age when he committed aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 2014)) and armed robbery with a firearm (*id.* § 18-2(a)(4)), he was excluded from the definition of a "delinquent minor." Consequently, he was to be prosecuted under the criminal laws of Illinois, as if he were an adult, instead of being prosecuted under the Juvenile Court Act. See 705 ILCS 405/5-130(1)(a) (West 2014).

¶ 10    On January 1, 2016, however, before Woodson was tried, Public Act 99-0258 (eff. Jan. 1, 2016) went into effect. Public Act 99-0258 amended section 5-130(1)(a) of the Juvenile Court Act by raising the age for adult prosecution for the listed offenses from 15 to 16 and by eliminating armed robbery with a firearm and aggravated vehicular hijacking with a firearm as offenses that made a 16-year-old prosecutable as an adult. Although Woodson was charged with an offense that was still listed in section 5-130(1)(a), namely, aggravated battery with a firearm, Public Act 99-0258 made him ineligible for prosecution as an adult, because he was 15 instead of 16 when he committed the aggravated battery with a firearm.

¶ 11    The statutory amendment applied to Woodson's pending case. Under section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2016)), substantive changes to statutes were to be applied only prospectively, whereas "procedural law changes [would] apply to ongoing proceedings." *People v. Ziobro*, 242 Ill. 2d 34, 46 (2011). The supreme court had held in *People*

*v. Patterson*, 2014 IL 115102, ¶ 104, that "[w]hether a defendant [was] tried in juvenile or criminal court [was] purely a matter of procedure." Thus, Public Act 99-0258 (eff. Jan. 1, 2016) was a procedural amendment that, under section 4 of the Statute on Statutes, applied to Woodson's ongoing case. He was supposed to be prosecuted in juvenile court instead of in adult court.

¶ 12    Even so, without objection, Woodson was tried in adult court—twice. The first trial ended in a mistrial. The evidence in the second trial tended to show the following facts. In the spring of 2014, Japaul Comage was a cannabis dealer, and Woodson was one of his customers. On numerous occasions, Woodson telephoned Comage before 11 a.m. to arrange a cannabis delivery. Comage repeatedly explained to Woodson that he was unable to meet with Woodson at that time of the day because he, Comage, had a young son in his care. The evening of March 15, 2014, Comage and Woodson agreed to meet at Locust and Charles Street in Decatur, Illinois. Woodson arrived at the meeting place, climbed into the passenger seat of Comage's pickup truck, and asked him for the cannabis. As Comage reached for the cannabis, Woodson shot him under the right armpit with a pistol. Comage begged Woodson not to shoot him again, because, Comage assured him, " [']ain't nobody going to know.['] " Comage gave Woodson both the cannabis and $600 in cash. As Woodson got out of the truck, he remarked to Comage that he " [']took it like a G['] " and that he had shot him because of his son. Comage drove himself to the hospital, fearing he did not have enough time to wait for an ambulance. According to the testimony of the treating physician, Dr. George Liu, the round had entered Comage's side and had struck a rib and if the round had not struck a rib, it would have gone through Comage's heart and would have killed him.

¶ 13    In addition to the foregoing evidence of the charged crimes, the circuit court allowed the State, in the second trial, to present evidence of an uncharged crime. The court ruled, over defense counsel's objection, that the evidence of the uncharged crime was relevant and

admissible to prove Woodson's *modus operandi*. The court instructed the jury, "This evidence has been received on the issue of the defendant's identification and may be considered by you only for that limited purpose." The State then called Janet Hill, who testified that she was home with her family on December 23, 2012, when her son alerted her that an intruder was in the house. She went upstairs and found Woodson armed with a pistol and standing over her son's pregnant girlfriend, who was lying on a bed screaming. Woodson demanded money and drugs. Hill answered that she had neither. Woodson then fired the pistol in Hill's direction, and the round struck a wall. Hill flung her hands up, Woodson fired the pistol a second time, and the round struck the ring finger of her left hand. A police officer, Shawn Bowsher, testified that after he dug a .22-caliber round out of the wall of the bedroom, he found bags of cannabis in a hollowed-out speaker. Bowsher further testified that Woodson had pleaded guilty to the attempted armed robbery of Hill. After the State rested, the defense called Woodson's mother, Lacyra Hyder, and his aunt, Keyla Ramsey, both of whom testified that Woodson was in Ramsey's house, with Ramsey and Hyder, the night when Comage was shot.

¶ 14 On October 4, 2016, in this second trial, the jury found Woodson guilty of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2014)), aggravated battery with a firearm (*id.* § 12-4.2(a)(1)), and armed robbery (*id.* § 18-2(a)(4)). The jury further found that, in committing the attempted first degree murder and the armed robbery, Woodson personally discharged a firearm and thereby caused great bodily injury to Comage. See *id.* §§ 8-4(c)(1)(D), 18-2(a)(4), (b).

¶ 15 On November 21, 2016, the circuit court held a sentencing hearing, in which the court decided (1) the aggravated battery conviction merged with the attempted first degree murder conviction (see *People v. Lucious*, 2016 IL App (1st) 141127, ¶ 57) and (2) in light of the

mitigating factors in section 5-4.5-105(a) of the Unified Code of Corrections (730 ILCS 5/5-4.5-105(a) (West 2016)), the court would not apply a firearm enhancement to the sentences (see 720 ILCS 5/8-4(c)(1)(D), 18-2(a)(4), (b) (West 2016)). The court sentenced Woodson to 15 years' imprisonment for attempted first degree murder, and the court sentenced him to an additional, consecutive 15-year term of imprisonment for armed robbery.

¶ 16    On December 1, 2016, defense counsel filed a motion in arrest of judgment, asserting that "[t]he court [was] without jurisdiction of the cause." 725 ILCS 5/116-2(b)(2) (West 2016). In his motion, defense counsel observed that because Woodson was 15 years old at the time of the offenses, section 5-130(1)(a) of the Juvenile Court Act (705 ILCS 405/5-130(1)(a) (West 2014)), *originally* required that the charges be brought in adult court instead of in juvenile court. On January 1, 2016, however (after Woodson was charged but before he was tried), Public Act 99-258 went into effect, "raising the age for automatic adult prosecution from 15 to 16." On December 1, 2016—the very day when defense counsel filed his motion—the supreme court issued *People ex rel. Alvarez v. Howard*, 2016 IL 120729, holding that Public Act 99-0258 (eff. Jan. 1, 2016) was retroactive. Therefore, the motion concluded, "[t]he criminal court" lacked "jurisdiction to hear this cause unless and until a discretionary transfer was heard and granted in the juvenile court." The circuit court denied the motion in arrest of judgment, and Woodson appealed. That appeal was the initial appeal in this case. (The present appeal is the second appeal.)

¶ 17    In that initial appeal, the State conceded that because the charges were still pending against Woodson when Public Act 99-0258 (eff. Jan. 1, 2016) went into effect, *Howard* compelled the conclusion that the statutory amendment applied to Woodson's case. *People v. Woodson*, No. 4-17-0131 (2018) (unpublished summary order under Illinois Supreme Court Rule 23(c)). By way of remedy, the State proposed a remand to the circuit court with directions to vacate the sentences

and to allow the State 10 days after the vacatur to file a petition for a discretionary transfer to adult court for sentencing. *Id.* In his reply brief in the initial appeal, Woodson agreed with that proposed remedy. *Id.* Accordingly, on May 21, 2019, by summary order, the appellate court reversed the circuit court's judgment and remanded the case with directions to "(1) vacate the sentence, (2) allow the State 10 days from the date on which the sentence is vacated to file a petition pursuant to section 5-130[(1)](c)(ii) of the Juvenile Court Act *** (705 ILCS 405/5-130(1)(c)(ii) (West 2016)), (3) hold a new sentencing hearing, and (4) proceed in a manner not inconsistent with this summary order." *Id.* at 3-4.

¶ 18        On July 25, 2019, on remand, before the circuit court vacated the 15-year prison terms, the State filed a "Petition to Set a Hearing to Determine if Defendant Should be Sentenced as a Juvenile or an Adult." This motion cited no statute.

¶ 19        On August 29, 2019, in a hearing before a new judge, the circuit court asked the State if it "believe[d] [that] the document [it had] filed [was] adequate for the transfer purposes." The prosecutor answered that that State would "probably end up filing a more specific petition citing statutory factors."

¶ 20        On September 11, 2019 (still before the circuit court vacated the sentences), the State filed a "Motion for Discretionary Transfer to Adult Court for Purposes of Sentencing." This motion invoked section 5-805(3) of the Juvenile Court Act (*id.* § 5-805(3)) instead of section 5-130(1)(c)(ii) (*id.* § 5-130(1)(c)(ii)). In this second motion, the State argued that, in addition to "the security of the public," the following circumstances would justify sentencing Woodson in adult court:

> "(1) the offense is an attempt murder (class X felony); (2) the defendant was not charged through accountability; (3) there is evidence that the offense was

committed in an aggressive and premeditated manner; (4) there is evidence that the offense caused serious bodily harm; and (5) there is evidence that the Defendant possessed a deadly weapon.”

¶ 21    To reiterate, then, after the remand but before the vacation of the sentences, the State filed two requests: the “Petition to Set a Hearing to Determine if Defendant Should be Sentenced as a Juvenile or an Adult,” which cited no statute, and the “Motion for Discretionary Transfer to Adult Court for Purposes of Sentencing,” which cited section 5-805(3).

¶ 22    In a hearing on October 29, 2019, the prosecutor told the circuit court:

“MR. ELWARD: By way of status, thank you, first of all, for setting this matter over today. I believe you have copies there and I brought courtesy copies as well. The petition to set a hearing to determine if this defendant should be sentenced as a juvenile or adult, we would ask today you vacate the sentence and set this matter over.

For the record, I’m going to tender the copy which I’ve given to Mr. Wessler [(defense counsel)], a copy of the sentencing hearing transcript in this matter. I also gave him copies of the police reports, the court transcripts, and a record of all the court filings that I received from the state’s attorney when we were last here on October 10th. ***

* * *

*** With permission of the Court, I think you have copies of these, but I also have what I’ve given to Mr. Wessler, if I may approach, Judge. It’s just a copy of the sentencing hearing. It’s about 28 pages, and that’s where the Court made the

- 9 -

decision. I don't want to get ahead of ourselves here because the first matter you have to decide is—

THE COURT: Is whether or not to sentence him as a juvenile or an adult.

MR. ELWARD: Right, exactly. Thank you, Judge.

THE COURT: So you're asking that I vacate the sentence previously imposed?

MR. ELWARD: I am, Judge.

THE COURT: And then set it for a determination as to whether or not it should be a juvenile or adult?

MR. ELWARD: Right. ***

MR. WESSLER: Right. So I want to make sure I'm clear. Today we vacate the sentence and make sure we're following the Appellate Court's order. Ten days from today, they have to file this motion, which I understand they're filing today.

MR. ELWARD: Yes.

* * *

THE COURT: Okay. I'm going to show then on Mr. Elward's motion, sentence previously imposed is vacated.

MR. WESSLER: Correct.

THE COURT: There is a motion—there's already a motion pending, motion filed some time ago, motion for discretionary transfer to adult court for purposes of sentencing that was filed some time ago. I believe that was filed in September.

MR. WESSLER: By Ms. Kroncke, I believe.

THE COURT: Yeah. And then we've got a petition to determine whether he should be—okay. So you want me to set this for status on the 27th?

MR. ELWARD: That's fine by me, Judge.

MR. WESSLER: At this point, yes. I don't know how much time we're going to need for a hearing. I don't know if we're going to have witnesses for a hearing. I don't know if I'm going to have—I know I'll have evidence probably to submit at the hearing, so I don't know how much time we'll need for that hearing yet or what my client wants to do as far as evidence at that hearing."

¶ 23 The docket entry for October 29, 2019, reads in part:

"Motion for Discretionary Transfer to Adult Court for Purposes of Sentencing on file.

Petition to Set a Hearing to Determine if Defendant Should be Sentenced as a Juvenile or an Adult on file.

Sentence previously imposed is VACATED."

¶ 24 On November 21, 2019, defense counsel filed a "Motion to Dismiss and Discharge." In this motion, defense counsel pointed out that on October 21, 2019, Woodson turned 21. The motion continued:

"10. The Court's statutory authority for bringing delinquency petitions does not extend to a person who has reached the age of 21 even if the alleged criminal activity occurred while the person was a minor. Any motion for a discretionary transfer to criminal court is a legal nullity if the motion is filed after the respondent reaches the age of 21. When the State is not authorized to initiate delinquency proceedings against a person who has turned age 21, it is also not authorized to file

a motion requesting discretionary transfer to criminal court. *In re Luis R.*, 239 Ill. 2d 295, 941 N.E.2d 136 (2010).

11. Since the State failed to comply with the Court's directive to file a petition pursuant to section 5-130(1)(c)(ii) of the Juvenile Court Act of 1987 (705 ILCS 405/5-130(1)(c)(ii) (West 2016)[)], Defendant is over 21 years old, and his sentence has been vacated, there is no longer any authority by which to transfer Defendant to criminal court."

Consequently, defense counsel moved that the circuit court immediately release Woodson from custody and that the court "dismiss[ ] and stri[ke]," "with prejudice," "all pending petitions, motions[,] and pleadings by the State."

¶ 25    In response to Woodson's motion for dismissal, the prosecutor noted the following facts. On July 25, 2019, the State filed a petition to set a hearing to determine whether Woodson should be sentenced as a juvenile or as an adult. Although that motion did not reference section 5-130, the motion made clear the State's intention to have a discretionary transfer hearing. On September 11, 2019, the State followed up with a motion for a discretionary transfer to adult court for sentencing, and that motion cited section 5-805(3). When the circuit court vacated the sentences on October 29, 2019, it made a docket entry that both the motion from July 2019 and the motion from September 2019 were "on file." Both motions, the prosecutor contended, "provide[d] the Defendant abundant notice of the People's intent to seek that the matter be transferred to adult court for sentencing." Therefore, the prosecutor disagreed that the case should be dismissed.

¶ 26    On January 14, 2020, the circuit court held a hearing on Woodson's "Motion to Dismiss and Discharge." The court remarked to defense counsel:

"THE COURT: And I think [the prosecutor's] position is that the motion was already on file before the sentence was vacated; is that correct?

MR. WESSLER: Yeah. A moot motion was on file prior to the sentence being vacated. You can't ask to resentence him when he's already still sentenced to the Department of Corrections. So that motion and that request, for two reasons, is—well, it's moot because he was already sentenced. It had not been vacated yet. And, secondly, it doesn't actually cite what the Appellate Court directed them to cite. It cites the wrong statute, Your Honor.

The Appellate Court is very clear on what to say and gave them 1, 2, 3—I've never seen an appellate court order literally put 1, 2, 3, 4—do 1, 2, 3, 4, and the state failed to do it. They failed to do it twice, Your Honor. Both pleadings they filed failed to cite the proper statute. So strict compliance, mandatory requirements. The state fails to meet those mandatory requirements. Strictly apply the law and sentence this person as a juvenile as the law requires. Thank you."

¶ 27    The circuit court was unconvinced by defense counsel's procedural arguments for dismissal. The court reasoned:

"[T]here's been a petition filed to determine how he should be sentenced. That's on file. He's put on notice. We're going to conduct a hearing to determine if he's going to be prosecuted as an adult or as—or sentenced as an adult or as a juvenile. So I don't think the Motion to Dismiss and Discharge is well taken. The conviction— essentially the Appellate Court affirmed the conviction. They didn't have a problem with the conviction itself. It's just a matter of what's going to happen to Mr.

Woodson, if he's going to be sentenced as an adult or as a juvenile. So I'm going to deny the Motion to Dismiss and Discharge."

¶ 28    On July 31, 2020, the circuit court held a hearing on the State's motion for a discretionary transfer of the case to adult court for sentencing. After hearing testimony and arguments, the court granted the motion. The court gave six reasons. First, Woodson had a prior violent offense, an attempted armed robbery in which he shot someone. Second, in the present case, Woodson was not convicted on a theory of accountability. Rather, he was convicted as a principal. Third, the circumstances of the present offenses were serious: Woodson shot the victim in the chest, and the round struck a rib, went through the liver, and stopped only a few millimeters short of the heart. Fourth, the offense was premeditated in that Woodson brought a pistol ostensibly to buy cannabis from the victim. Fifth, Woodson had been through the juvenile justice system already, without any rehabilitative effect. Sixth, the proposed transfer was necessary to the security of the public. So, the court granted the State's motion, transferring the case from juvenile court to adult court for sentencing.

¶ 29                          C. The Second Sentencing Hearing

¶ 30    On October 2, 2020, after transferring the case to adult court, the circuit court held a second sentencing hearing. The court began by noting that it had received a presentence investigation report, which was filed on September 1, 2020. The prosecutor stated that he had no evidence in aggravation and that the State would rely on the original presentence investigation report, which was filed on November 16, 2016. The prosecutor also handed the court "a copy of the original sentencing report." For its evidence in mitigation, the defense called Woodson's aunt, Keyonna Hyder, who testified that she had lived with Woodson for most of his life prior to his incarceration in 2014 and that she had found him to be helpful and supportive. Defense counsel

- 14 -

requested the court to take judicial notice of the original presentence investigation report. Woodson made a statement in allocution, expressing remorse for the shooting. After arguments by the attorneys, the court discussed the factors in mitigation and aggravation. The court then decided that although "the original sentence was appropriate," the court would now sentence Woodson to 2 terms of imprisonment for 12 years, the second term to run consecutively to the first.

¶ 31   This appeal followed.

¶ 32         II. ANALYSIS

¶ 33        A. The Law of the Case

¶ 34   1. *The Discretionary Transfer of the Case to Adult Court for Sentencing*

¶ 35   Under a correct legal analysis, section 5-130(1)(c)(ii) of the Juvenile Court Act (705 ILCS 405/5-130(1)(c)(ii) (West 2016)) is inapplicable to Woodson after the amendments made by Public Act 99-0258 (eff. Jan. 1, 2016). Section 5-130(1)(c)(ii) provides as follows:

> "If after trial or plea the court finds that the minor committed an offense not covered by paragraph (a) of this subsection (1) [(705 ILCS 405/5-130(1)(a) (West 2016))], that finding shall not invalidate the verdict or the prosecution of the minor under the criminal laws of the State; however, unless the State requests a hearing for the purpose of sentencing the minor under Chapter V of the Unified Code of Corrections [(820 ILCS 5/5-1-1 to 5-9-4 (West 2016))], the Court must proceed under Sections 5-705 and 5-710 of this Article [(705 ILCS 405/5-705, 5-710 (West 2016))]." 705 ILCS 405/5-130(1)(c)(ii) (West 2016).

For two reasons, the terms of the quoted statutory text do not fit Woodson's case. First, Woodson is not "the minor" (*id.*), which, in context, means a minor "who at the time of an offense was at least 16 years of age." *Id.* § 5-130(1)(a). Second, he did not "commit[ ] an offense not covered by

paragraph (a) of this subsection (1)." *Id.* § 5-130(1)(c)(ii). Section 5-130(1)(a) covered the charged offense of aggravated battery with a firearm and, in addition, "all other charges arising out of the same incident" as the aggravated battery with a firearm. *Id.* All of the offenses with which Woodson was charged—aggravated battery with a firearm plus the other offenses—arose out of the same incident. Therefore, Woodson's offenses were covered by section 5-130(1)(a), and section 5-130(1)(c)(ii) was, by its terms, inapposite.

¶ 36    Nevertheless, in the previous appeal, the parties requested us to enter a remand order that assumed the applicability of section 5-130(1)(c)(ii), and we granted the request. "Where the Appellate Court[,] *** on the first appeal to it, announces a particular view of the law governing the case and reverses and remands the case for further proceedings in accordance with the views announced, if the case is again brought before such court for review[,] the former decision is binding on the court making it, and the questions decided and determined by it on the first appeal are not open for [reconsideration] on the second appeal." (Internal quotation marks omitted.) *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 312 (1981); but *cf. People v. Patterson*, 154 Ill. 2d 414, 468 (1992) (explaining that the law-of-the-case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided; it is not a limit on their power"). "The [law-of-the-case] doctrine applies to questions of law and fact and encompasses a court's explicit decisions, as well as those decisions made by necessary implication." *American Service Insurance Co. v. China Ocean Shipping Co. (Americas) Inc.*, 2014 IL App (1st) 121895, ¶ 17. The applicability of section 5-130(1)(c)(ii) to Woodson's case was necessarily implied in our summary remand order. Thus, it is the law of the case that the discretionary-transfer-for-sentencing provision of the Act, section 5-130(1)(c)(ii), applies to Woodson.

¶ 37 The State invokes an exception to the law of the case, the exception for palpable error. See *Deprizio v. MacNeal Memorial Hospital Ass'n*, 2014 IL App (1st) 123206, ¶ 19. The exception for palpable error, however, is applied "only in the very rarest of situations," when the prior decision "was clearly erroneous and would work a manifest injustice." *Radwill v. Manor Care of Westmont, IL, LLC*, 2013 IL App (2d) 120957, ¶ 12. The State cannot reasonably take the position that we were unjust by doing precisely what the State asked us to do. The parties are estopped from raising any error in our previous decision, since we entered the decision at their request. See *People v. Matthews*, 2016 IL 118114, ¶ 14. The doctrine of invited error prohibits a party from requesting to proceed in one manner and then later contending on appeal that proceeding in that manner was a mistake. *People v. Carter*, 208 Ill. 2d 309, 319 (2003). A party is barred from raising, on appeal, an error that the party induced or to which the party consented. *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004).

¶ 38 We will hold the State and Woodson to their invited error. See *Matthews*, 2016 IL 118114, ¶ 14. Consistent with the summary remand order that the parties requested, we will treat Woodson as "the minor," meaning a minor who was at least 16 when he committed his offenses, and we will treat his offenses as being not covered by section 5-130(1)(a). Thus, if the circuit court granted a motion pursuant to section 5-130(1)(c)(ii), Woodson was to be sentenced as an adult: those were the terms of our remand order.

¶ 39 The law of the case, though, does not foreclose all of the arguments that Woodson makes in this second appeal. Arguably, our remand order presupposed that if Woodson's case was to be transferred from juvenile court to adult court for sentencing, the transfer would have to happen before Woodson aged out of the Juvenile Court Act. A hearing on a motion pursuant to section 5-130(1)(c)(ii) would be, after all, a juvenile proceeding, since that section is part of the

Juvenile Court Act. The supreme court has held, "It is clear that the circuit court in juvenile proceedings maintains jurisdiction only until the minor turns 21 years of age." *In re Jamie P.*, 223 Ill. 2d 526, 533 (2006). (Probably, the supreme court now would say "statutory authority" instead of "jurisdiction": the circuit court has *statutory authority* to proceed under the Juvenile Court Act only as long as the minor is younger than 21. See *People v. Fiveash*, 2015 IL 117669, ¶ 14 (agreeing that "the juvenile court has no authority over [the] defendant because he was 23 years old when the instant proceedings were instituted and was, therefore, no longer subject to the Act's provisions"); *Luis R.*, 239 Ill. 2d at 302-03 (observing that, "[o]n its face, *** the State's petition allege[d] the existence of a justiciable matter, which [was] the only prerequisite to the trial court's exercise of subject matter jurisdiction").) "[T]he plain intent of the Juvenile Court Act was to set the age of 21 as the maximum for all juvenile dispositions, with the limited exception of the [extended-jurisdiction juvenile prosecutions] provided in section 5-810 [(705 ILCS 405/5-810 (West 1998))]." *Jamie P.*, 223 Ill. 2d at 539. Again the supreme court emphasized in *Jamie P.*, "[T]he only exception to the rule of automatic termination of all proceedings under the Act at age 21 is that set forth in section 5-810." *Id.*

¶ 40    On October 21, 2019, Woodson turned 21, whereupon all proceedings under the Juvenile Court Act, including proceedings under section 5-130(1)(c)(ii), automatically ended, so it would seem. The State itself concedes that "since [Woodson] turned 21 before the [circuit] court heard or ruled on the State's petition for discretionary transfer, the juvenile court no longer had statutory authority to proceed against him under the Juvenile Court Act." The State agrees with Woodson that "as [his] age places him outside the scope of the Juvenile Court Act, the circuit court had no authority to proceed on a discretionary transfer hearing under the Act."

¶ 41    This concession by the State makes perfect sense in light of the pronouncements in *Jamie P.* and *Luis R.* that we just quoted. All proceedings under the Juvenile Court Act automatically terminate when the minor turns 21. A proceeding under section 5-130(1)(c)(ii) of the Juvenile Court Act is a proceeding under the Juvenile Court Act. *Ergo*, it would seem, there could be no hearing pursuant to that section after Woodson turned 21. As it turns out, the matter is not so simple. A more recent case, *People v. Fort*, 2017 IL 118966, introduces a complication.

¶ 42    In *Fort*, the State charged the defendant, age 16, with first degree murder and, before the bench trial, dismissed the remaining charges. *Id.* ¶¶ 3-4. Because first degree murder was an offense listed in section 5-130(1)(a) of the Juvenile Court Act (705 ILCS 405/5-130(1)(a) (West 2008)), the defendant was tried in adult court. *Fort*, 2017 IL 118966, ¶ 4. At the conclusion of the bench trial, the circuit court found the elements of first degree murder to be proven, but the court reduced the offense of first degree murder to an uncharged offense of second degree murder, finding that, in killing the victim, the defendant had an unreasonable belief in the need for self-defense. *Id.* ¶ 12. Although the State in *Fort* never filed a motion for adult sentencing pursuant to section 5-130(1)(c)(ii) (705 ILCS 405/5-130(1)(c)(ii) (West 2008)), the circuit court sentenced the defendant, without objection, to 18 years' imprisonment in the Illinois Department of Corrections. *Fort*, 2017 IL 118966, ¶ 13.

¶ 43    On appeal, the defendant in *Fort* argued, for the first time, that because second degree murder was "a non-automatic transfer offense," he should have been sentenced as a juvenile. *Id.* ¶ 14. The defendant, however, raised no challenge to his adult sentence while his case was in the circuit court. Consequently, the supreme court noted, "this issue was forfeited and may not be considered on appeal unless" the sentencing error of which the defendant now complained was a plain error. *Id.* ¶ 18. The supreme court decided that "[i]f [the] defendant [was] correct that

the trial court was statutorily prohibited from sentencing him as an adult," the statutory violation would be a plain error in the sense that the violation would have made the sentencing hearing unfair and would have threatened the integrity of the judicial process. *Id.* ¶ 9. The supreme court, therefore, turned to the question of "whether [the] defendant's adult sentence was authorized under section 5-130 of the Act [(705 ILCS 405/5-130 (West 2008))]." *Id.*

¶ 44 Section 5-130(1)(c)(i) provided that if the minor were convicted of " 'any offense covered by' " section 5-130(1)(a), the circuit court would have to sentence the minor as an adult under chapter V of the Unified Code of Corrections. *Id.* ¶ 28 (quoting 705 ILCS 405/5-130(1)(c)(i) (West 2008)). Section 5-130(1)(a) listed four offenses, including first degree murder, and "provide[d] that '[t]hese charges and all other *charges* arising out of the same incident shall be prosecuted under the criminal laws of this State.' " (Emphasis added.) *Id.* ¶ 30 (quoting 705 ILCS 405/5-130(1)(a) (West 2008)). "Thus, in order for a conviction to be 'covered by' section 5-130(1)(a)," as section 5-130(1)(c)(i) put it, the conviction had to be either a charged offense enumerated in section 5-130(1)(a) or "a separate *charge* arising out of one of the enumerated charges." (Emphasis added.) *Id.* The defendant in *Fort* was never charged with second degree murder. *Id.* ¶ 31. The circuit court had found him guilty of second degree murder, but the State had never charged him with second degree murder. Because second degree murder—being uncharged—was not covered by section 5-130(1)(a), the circuit court "[had to] proceed under the Juvenile Court Act for sentencing unless, "pursuant to section 5-130(c)(ii) (705 ILCS 405/5-130(1)(c)(ii) (West 2008)), "the State move[d] for adult sentencing and that request [was] granted." *Fort*, 2017 IL 118966, ¶ 30. The State never so moved. Therefore, the supreme court concluded, the circuit court committed plain error by imposing the statutorily unauthorized adult sentence. *Id.* ¶ 40.

¶ 45	For the present appeal, the significant aspect of *Fort* is the remedy that the supreme court devised for the noncompliance with section 5-130(1)(c)(ii) of the Juvenile Court Act. Because the circuit court at no time "suggest[ed] to the parties that [the] defendant was subject to juvenile sentencing," the State "had no reason to request a hearing for the purpose of sentencing [the] defendant under the Unified Code of Corrections." *Id.* ¶ 40. Therefore, the supreme court decided:

> "[T]he proper resolution is to remand the cause to the trial court with directions to vacate [the] defendant's sentence and allow the State to file a petition requesting a hearing for adult sentencing pursuant to section 5-130(1)(c)(ii). Should the trial court find after the hearing that [the] defendant is not subject to adult sentencing, the proper remedy is to discharge the proceedings against [the] defendant since he is now over 21 years of age and is no longer eligible to be committed as a juvenile under the Act." *Id.* ¶ 41.

By analogy to the deadline in section 5-130(1)(c)(ii), the State "[had to] file its motion within 10 days of the date the trial court vacates [the] defendant's sentence." *Id.* ¶ 43; see 705 ILCS 405/5-130(1)(c)(ii) (West 2008) (providing that, "[t]o request a hearing, the State must file a written motion within 10 days following the entry of a finding or the return of a verdict").

¶ 46	Woodson sees *Fort* as helpful to his own case. On the authority of *Fort*, he argues that the proceedings against him "should have been discharged after the State failed to file a motion for him to be sentenced as an adult within 10 days of his prior sentence being vacated." On remand, the State filed its "Petition to Set a Hearing to Determine if Defendant Should be Sentenced as a Juvenile or an Adult" *before* the vacation of the sentences instead of within 10 days *after* the vacation of the sentences.

¶ 47 On October 29, 2019, however, when the circuit court vacated the 15-year prison terms, the prosecutor brought copies of some documents with him. The prosecutor said, "I believe you have copies there and I brought courtesy copies as well. *The petition to set a hearing to determine if this defendant should be sentenced as a juvenile or adult \*\*\**." (Emphasis added.) He then handed copies of documents to defense counsel and the circuit court. Presumably, one of the documents he handed out was the "Petition to Set a Hearing to Determine if Defendant Should be Sentenced as a Juvenile or an Adult," to which he had explicitly referred. The docket entry for October 29, 2019, says, "Petition to Set a Hearing to Determine if Defendant Should be Sentenced as a Juvenile or an Adult on file." We infer, then, that in the hearing in which the court vacated the sentences, the prosecutor renewed his discretionary-transfer-for sentencing motion. We decline to make a meaningless, formalistic distinction between filing a motion and renewing one. Therefore, we find compliance with the mandate of our previous decision.

¶ 48 In a word, the filing requirement was satisfied. The remaining question, then, is whether Woodson's attainment of age 21 before the circuit court ruled on the pending motion for a discretionary transfer divested the court of authority to rule on the motion. The State concedes that Woodson's twenty-first birthday had that effect. As a court of review, however, we are not bound by parties' concessions. See *People v. Carter*, 2015 IL 117709, ¶ 22; *People v. Rolfe*, 2016 IL App (4th) 130832, ¶ 13. Although, generally, all proceedings under the Juvenile Court Act automatically terminate when the minor turns 21 (See *Fiveash*, 2015 IL 117669, ¶ 33; *Jamie P.*, 223 Ill. 2d at 539), *Fort* establishes an exception to that rule: the defendant's turning 21 does not divest a circuit court of authority to rule on a motion for adult sentencing pursuant to section 5-130(1)(c)(ii) of the Juvenile Court Act (705 ILCS 405/5-130(1)(c)(ii) (West 2018). See *Fort*, 118966, ¶ 41; *People v. Clark*, 2020 IL App (1st) 182533, ¶ 84. If the circuit court in *Fort* lacked

statutory authority to decide, pursuant to section 5-130(1)(c)(ii) of the Juvenile Court Act, whether a 21-year-old's case should be transferred from juvenile court to adult court for sentencing, the supreme court could not have logically remanded the defendant's case for that purpose. In accordance with *Fort*, then, we give effect to the circuit court's decision to transfer the case of 21-year-old Woodson to adult court for sentencing.

¶ 49                                    2. *Evidence of an Uncharged Offense*

¶ 50            Woodson contends that the circuit court abused its discretion in his second trial by admitting evidence that he committed an uncharged offense of attempted armed robbery, namely, his attempt to rob Hill at gunpoint. Under Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011), "[e]vidence of other crimes *** is not admissible to prove the character of a person in order to show action in conformity therewith," but evidence of other crimes "may *** be admissible for other purposes, such as proof of *** identity." Proof of the defendant's *modus operandi*, or distinctive way of committing a crime, can serve as proof of the defendant's identity as the perpetrator of the charged offense. See *People v. Wilson*, 214 Ill. 2d 127, 140 (2005). Woodson argues, however, that "any similarities between the attempted armed robbery of Janet Hill and the armed robbery of Mr. Comage were insufficient to establish a distinct *modus operandi* attributable to [Woodson]."

¶ 51            We hold, *de novo*, that the law of the case bars Woodson from raising this evidentiary issue. See *People v. Brown*, 2017 IL App (2d) 160971, ¶ 24. "The rule is that no question which was raised or could have been raised in a prior appeal on the merits can be urged on subsequent appeal and those not raised are considered waived." *Kazubowski v. Kazubowski*, 45 Ill. 2d 405, 413 (1970); *Brown*, 2017 IL App (2d) 160971, ¶ 24. The record enabled Woodson to

make this other-crime argument in the previous appeal. He is barred from doing so in this subsequent appeal. See *id.*

¶ 52                    B. Additional Factors in Mitigation for Youthful Offenders

¶ 53        Woodson claims that, on remand, when the circuit court resentenced him, the court failed to consider the additional mitigating factors in section 5-4.5-105(a) of the Unified Code of Corrections (730 ILCS 5/5-4.5-105(a) (West 2018)). That section provides that if the offender is younger than 18, the sentencing court must consider a list of nine additional mitigating factors, such as "the person's age, impetuosity, and level of maturity at the time of the offense" (*id.* § 5-4.5-105(a)(1)) and "whether the person was subjected to outside pressure" (*id.* § 5-4.5-105(a)(2)).

¶ 54        Woodson admits that he did not take the two steps necessary to preserve this claimed error for review. That is, he did not object to the alleged error in the resentencing hearing, nor did he reiterate the objection in a postsentencing motion. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Nevertheless, he argues that the evidence in the resentencing hearing was closely balanced and that the doctrine of plain error therefore should avert the procedural forfeiture of this sentencing issue. See *id.* at 545.

¶ 55        The first question in plain-error analysis is "whether there was a clear or obvious error." *People v. Sebby*, 2017 IL 119445, ¶ 49. In the original sentencing hearing, as the State observes, the circuit court explicitly took into consideration the factors listed in section 5-4.5-105(a) and the court decided, on the basis of those factors, that it would not impose the firearm enhancement of "25 years or up to a term of natural life." 720 ILCS 5/8-4(c)(1)(D), 18-2(a)(4), (b) (West 2016). Thus, on remand, when the court decided to reduce the 15-year prison terms to 12-year prison terms, the factors in section 5-4.5-105(a) were already "baked into" the 15-year prison terms that the court decided to reduce. In the new sentencing hearing, the court took

it for granted that the factors in section 5-4.5-105(a) called for refraining from imposing a firearm enhancement. Not only did the court adhere to that prior determination, but the court imposed prison terms that were three years shorter than the prison terms the court had imposed before. Also, we note that in the hearing of October 19, 2019, and in the resentencing hearing, the prosecutor gave the court a copy of the sentencing hearing transcript in which the court had discussed the additional youth-related mitigating factors. Thus, we find no clear or obvious error, and we give effect to the procedural forfeiture of this sentencing issue. See *People v. Eppinger*, 2013 IL 114121, ¶ 19.

¶ 56                                    III. CONCLUSION

¶ 57          For the foregoing reasons, we affirm the circuit court's judgment.

¶ 58          Affirmed.